**Robert D. HOLDEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 15A05–0310–CR–532.**

Court of Appeals of Indiana.

Oct. 13, 2004.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Robert Holden appeals from his convictions for two counts of Robbery as Class B felonies [1] and two counts of Conspiracy to

---

1. Ind.Code § 35–41–2–4 (Burns Code Ed. Repl.1998); Ind.Code § 35–42–5–1 (Burns

Commit Robbery as Class B felonies.[2] He presents four issues for our review:

I. Whether the convictions are supported by sufficient evidence;

II. Whether evidence related to a subsequent robbery of a third bank should have been admitted;

III. Whether the convictions for robbery and conspiracy violate double jeopardy; and

IV. Whether the trial court erred in sentencing Holden.

We affirm in part, reverse in part, and remand with instructions.

The facts reveal that Holden, along with Bryan Harvey, made plans to rob the Firstar bank in Dillsboro. In preparation, they observed the daily routine at the bank and planned an escape route. They then approached Jacob Turner and asked him to rob the bank. On March 1, 2001, Turner, using a handgun given to him by Holden, entered the bank and demanded money from the tellers. He took approximately $16,000 and fled to a waiting vehicle driven by Harvey. Holden followed in another vehicle. Turner subsequently discarded his clothes and the handgun. The three then drove to Cincinnati and spent their money. Once the funds dried up, they planned a second robbery in Moores Hill.

To prepare for the Moores Hill robbery, they scouted out the bank and devised a plan as they had done before. Holden also provided money to his girlfriend, Jennifer Brummet, to purchase a .45 caliber Smith & Wesson handgun. After the plans were made, Turner decided not to participate. Thus, on April 10, 2001, Harvey entered the Firstar bank in Moores Hill armed with the handgun and removed cash from the tellers' drawers. Holden waited for Harvey and drove him away from the scene. Holden and Harvey split the proceeds from that robbery.

On June 1, 2001, a third robbery took place, this one at a bank in Switzerland County.[3] Following that robbery, an Indiana State Police Trooper stopped the car driven by Holden which was seen fleeing from the scene. Turner was the passenger in that car. Through the investigation of the Switzerland County robbery, the police were able to connect Holden to the Dillsboro and Moores Hill robberies. As a result, Holden was charged with two counts of robbery and two counts of conspiracy to commit robbery. Additionally, he pleaded guilty to the robbery in Switzerland County.

I

*Sufficiency of the Evidence*

 Holden asserts that the evidence was insufficient to support his convictions for any of the crimes. Specifically, he contends that the only evidence of his guilt was the testimony of the co-defendants who gave their testimony as part of their plea agreements and the statement of his girlfriend who was not charged with any involvement in the crimes. In attempting to refute the testimony upon which the jury relied to convict him, Holden claims that it is incredibly dubious and should be disregarded. He opines that without their testimony, no evidence exists upon which he can be convicted.

Our standard of review for a sufficiency of the evidence claim is well settled. We will not reweigh the evidence or judge the

Code Ed. Repl.1998).

**2.** Ind.Code § 35–41–5–2 (Burns Code Ed. Repl.1998); I.C. § 35–42–5–1.

**3.** Dillsboro and Moores Hill are in Dearborn County.

credibility of the witnesses. *VanMatre v. State,* 714 N.E.2d 655, 657–58 (Ind.Ct.App. 1999). We will consider only the evidence which supports the conviction and any reasonable inferences which the trier of fact may have drawn from the evidence. *Id.* at 657. We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.* at 658. Reasonable doubt is a doubt which arises from the evidence, the lack of evidence, or a conflict in the evidence. *Chambers v. State,* 551 N.E.2d 1154, 1156 (Ind.Ct.App. 1990).

■■■ We will not impinge upon the jury's resolution with regard to the credibility of witnesses unless confronted with testimony of inherent improbability, or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Heeter v. State,* 661 N.E.2d 612, 615 (Ind.Ct.App. 1996). A conviction will be overturned only where the only testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. *Id.* A conviction may be reversed if the sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence of appellant's guilt. *White v. State,* 706 N.E.2d 1078, 1079–80 (Ind.1999).

Holden recognizes that the incredible dubiosity rule applies in situations where a sole witness testifies to a fact but argues that it should be expanded to those cases in which "several witnesses give testimony rendered suspect in light of their incentive for lenient sentences." Appellant's Brief at 7. We are not persuaded by Holden's argument that such an expansion of the rule is needed. In any event, were the rule to be applied here, the testimony does not run counter to human experience and is not of such nature that no reasonable person could believe it. The testimony provided by Holden's accomplices relayed the events surrounding the planning for the robberies and the robberies themselves in a logical and consistent manner. There was nothing inherently improbable in their testimony.

Additionally, we note that Holden's request appears to be nothing more than a request that we determine that the witnesses were not credible and that we reweigh the evidence in his favor. We will not do so. The evidence presented at trial is sufficient to support Holden's convictions.

## II

### Admission of Evidence of Third Bank Robbery

■ Holden also claims that the trial court erred in allowing evidence related to the robbery which took place in Switzerland County. Specifically, he challenges the testimony which revealed that the vehicle he was driving had been stopped after fleeing the scene of the bank robbery, that he led police to a .45 caliber Smith .& Wesson handgun used in that robbery, and that the particular handgun was admitted into evidence at the trial as evidence of the crimes committed in Dillsboro and Moores Hill. He alleges that the evidence was admitted in violation of Indiana Evidence Rule 404(b).

■■■ The admission of evidence is within the sound discretion of the trial court. *Cowan v. State,* 783 N.E.2d 1270, 1274 (Ind.Ct.App.2003), *trans. denied.* We will reverse the trial court only for an abuse of discretion. *Id.* A trial court abuses its discretion when its evidentiary ruling

is clearly against the logic, facts, and circumstances presented. *Id.*

 Evidence Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

The rationale underlying Evidence Rule 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Cowan,* 783 N.E.2d at 1275. Following an objection to the admission of evidence upon the ground that it violates Evidence Rule 404(b), we: (1) determine whether evidence of bad acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act, and (2) balance the probative value of such evidence against its prejudicial effect. *Id.* Evidence Rule 404(b) does not bar the admission of evidence of uncharged acts which are "intrinsic" to the charged offense. *Lee v. State,* 689 N.E.2d 435, 439 (Ind.1997). Other acts are "intrinsic" if they occur at the same time and under the same circumstances as the crimes charged. *See id.* (stating in a parenthetical citation

that deeds are termed "extrinsic" when the other crimes or wrongs occurred at different times and under different circumstances from the charged offense).

In this case, the trial court found that some evidence of the Switzerland County robbery was intrinsic to the Dillsboro and Moores Hill robberies because a complete story could not be told without referring to how the police came into possession of the handgun and identified Holden as a suspect. Given the facts in this case, especially the length of time between the robberies, this finding is problematic, at least with respect to the fact that to some degree the evidence impliedly suggested that Holden had been involved in the Switzerland County robbery.[4] However, we need not decide whether the evidence should have been admitted because the admission of the evidence was harmless.

 Errors in the admission of evidence will not result in reversal if the error is harmless; that is, if the probable impact of the evidence upon the jury is sufficiently minor so as to not affect a party's substantial rights. *King v. State,* 799 N.E.2d 42, 49 (Ind.Ct.App.2003), *trans. denied.* The testimony with regard to the robbery in Switzerland County was brief, and the questioning about the robbery was phrased so that the information elicited would establish that it led to the discovery of the .45 caliber Smith & Wesson handgun which was believed to have been used in the Moores Hill robbery. Additional testimony established that the particular gun recovered by the police had been purchased by Brummet at Holden's request with his money. That purchase took place

---

4. Near the conclusion of the trial, in an effort to present more evidence of the Switzerland County robbery, the State also argued that the evidence should be admitted because the crimes were "signature crimes." The trial court then agreed that the State had shown the crimes to be signature crimes but did not allow any additional evidence to be admitted. Upon appeal, the State has not pursued the theory that the crimes were signature crimes, so we do not address it.

on March 25, 2001, approximately two weeks before the Moores Hill robbery.

More important to the State's case was the description of events surrounding the Dillsboro and Moores Hill robberies. Both Harvey and Turner testified to their roles in the crimes, with each personally robbing one of the bank branches, and to Holden's role in coordinating their efforts. From the evidence provided by Harvey and Turner, the jury learned that Holden had taken part in driving by both banks to scout the locations and helped plan routes of escape. The jury also was informed that following the Dillsboro robbery, Holden followed Harvey and Turner as they fled the scene and later drove them to Harvey's parents' house so that they could divide the money. Before the Moores Hill robbery, Turner backed out, which resulted in Harvey committing the actual robbery and Holden driving the getaway car. Harvey also testified that Holden had provided him with a .45 caliber Smith & Wesson handgun to use for the Moores Hill robbery, and that the handgun recovered by the police bore a striking resemblance to the handgun he had used. Given the significant amount of detailed information about the Dillsboro and Moores Hill robberies, we conclude that the probable impact of the evidence of the Switzerland County robbery upon the jury was sufficiently minor so as to not have affected Holden's substantial rights.

### III

### *Double Jeopardy*

Holden also asserts that his convictions for robbery and conspiracy to commit robbery violate the prohibitions against double jeopardy. His claim arises from his belief that the jury relied upon the same facts to establish the robbery as was used to establish the overt act for the conspiracy.

The trial court provided the jury with an instruction which tracked the charging information. That instruction stated, in relevant part:

"The Information as to Count I alleges that on or about March 1, 2001, in Dearborn County, State of Indiana, Robert D. Holden, Brian Harvey and Jacob Turner did knowingly take property, to-wit: cash money from another person, to-wit: Firstar Bank, Dillsboro, Indiana, by using or threatening the use of force on persons, to-wit: bank tellers, and said acts were committed while armed with a deadly weapon, to-wit: a handgun.

The Information as to Count II alleges that on or about March 1, 2001, In Dearborn County, State of Indiana, Robert D. Holden, Brian D. Harvey and Jacob L. Turner did, with intent to commit a felony, to-wit: robbery while armed with a deadly weapon, agree with another person, to-wit: Robert D. Holden, Jacob L. Turner and/or Brian D. Harvey, to commit said felony, and Jacob L. Turner did perform an overt at in furtherance of the agreement, to-wit: *did enter the Firstar Bank in Dillsboro, Indiana, and robbed said bank with a deadly weapon, to-wit: a handgun.*

The Information as to Count III alleges that on or about April 10, 2001, in Dearborn County, State of Indiana, Robert D. Holden and Brian D. Harvey did knowingly or intentionally take property, to-wit: cash from another person, to-wit: Firstar Bank in Moores Hill, Indiana, by using or threatening the use of force on a person, to-wit: a bank teller, and said acts were committed while armed with a deadly weapon, to-wit: a handgun.

The Information as to Count IV alleges that on or about April 10, 2001, in

Dearborn County, State of Indiana, Robert D. Holden and Brian D. Harvey did, with intent to commit a felony, to-wit: robbery with a deadly weapon, agree with another person to commit said felony, to-wit: Brian D. Harvey and/or Robert Holden, and Brian D. Harvey performed an overt act in furtherance of the agreement, to-wit: *entered the Firstar Bank in Moores Hill, Indiana, and robbed the bank with a deadly weapon, to-wit: a handgun.*"

Appendix at 538–39 (emphasis supplied).

The instructions given track the relevant statutes with regard to what had to be proved by the State in order for the jury to find Holden guilty of the crimes charged. The instruction establishing the elements for a finding of guilt for robbery of the Dillsboro bank states:

"The defendant is charged in Count I with aiding, inducing or causing Robbery While Armed With A Deadly Weapon.

Aiding, inducing or causing an offense is defined by statute as follows:

'A person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense.'

To convict the defendant, the State must have proved each of the following elements:

1. That Jacob Turner committed the crime of robbery while armed with a deadly weapon in that on or about March 1, 2001, Jacob Turner did knowingly take property, to-wit: cash money from another person, to-wit: Firstar Bank, Dillsboro, Indiana, by using or threatening the use of force on persons, to-wit: bank tellers, and said acts were committed while armed with a deadly weapon, to-wit: a handgun;

And the defendant

2. Knowingly or intentionally;

3. Aided Jacob Turner in committing the crime of robbery while armed with a deadly weapon.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of aiding, inducing or causing robbery while armed with a deadly weapon, a Class B Felony." App. at 540.

The jury instruction listing the elements necessary for a finding of guilt upon the conspiracy charge states:

"The defendant is charged in Count II with Conspiracy to commit the crime of Robbery While Armed With A Deadly Weapon.

The crime of conspiracy is defined by statute as follows:

'A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. The State must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.'

To convict the defendant of Conspiracy To Commit Robbery While Armed With A Deadly Weapon, the State must have proved each of the following elements:

The defendant:

1. Agreed with Jacob Turner and/or Brian Harvey to commit the crime of robbery while armed with a dead-

ly weapon, which is defined by statute as follows:

'A person who knowingly or intentionally takes property from another person by using or threatening the use of force on any person, or by putting any person in fear commits Robbery, a Class C Felony. However, the offense is a Class B Felony if it is committed while armed with a deadly weapon or results in bodily injury to any other person other than a defendant.'

2. With the intent to commit the crime; and

3. Jacob Turner performed an overt act in furtherance of the agreement in *that on or about March 1, 2001, Jacob Turner did enter the Firstar Bank in Dillsboro, Indiana and robbed said bank with a deadly weapon, to-wit: a handgun.*

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of Conspiracy To Commit Robbery While Armed With A Deadly Weapon, a Class B Felony." App. at 541 (emphasis supplied).

The instructions listing the elements of the charges for the Moores Hill robbery were identical except for the required changes in the names and date.

In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), our Supreme Court established a two-part test for analyzing double jeopardy claims. Specifically, it held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* In this case, Holden asserts only that a violation exists under the actual evidence test.

■■■ In a challenge under the actual evidence test, the appellant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish essential elements of one offense may have also been used to establish the essential elements of a second challenged offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind.2002); *Richardson*, 717 N.E.2d at 53; *Alexander v. State*, 768 N.E.2d 971 (Ind.Ct.App.2002) (deducing that our Supreme Court has consistently overturned convictions upon double jeopardy grounds where the evidentiary facts establishing *an* essential element of one offense establish *all* of the essential elements of the second challenged offense), *affirmed on reh'g* 772 N.E.2d 476, *trans. denied.* In applying the actual evidence test, the reviewing court must identify the essential elements of each offense and evaluate the evidence from the jury's perspective. *Spivey*, 761 N.E.2d at 832. In our review, we consider the jury instructions where relevant, the arguments of counsel, and other factors which may have guided the jury's determination. *Id.*

In *Guffey v. State*, 717 N.E.2d 103 (Ind. 1999), our Supreme Court was called upon to review a claim of double jeopardy under a fact situation nearly identical to that in the case before us. The facts in that case reveal that Guffey was convicted of aiding in the commission of armed robbery and conspiracy to commit armed robbery for his part in a robbery carried out by his nephew. In its opinion, the Court related the facts in great detail, but determined that notwithstanding the evidence of elabo-

rate planning and implementation, the jury was instructed to direct its attention to specific evidentiary facts. Specifically, the jury instructions directed the jury to the fact that Guffey provided the handgun to his nephew and waited for him to commit the robbery for both crimes. The court held that a reasonable possibility existed that the jury used the same evidentiary facts to find Guffey guilty of both crimes, and as a result, it vacated his conviction for conspiracy. *Id.* at 107.

Likewise, in *Fosha v. State,* 747 N.E.2d 549 (Ind.2001), our Supreme Court overturned a conviction for conspiracy to commit murder because it concluded through application of the *Richardson* actual evidence test that convictions for that crime and murder violated the prohibition against double jeopardy. In *Fosha,* the charging information, which was read to the jury, stated that Maurice Fosha and Lance Wilson knowingly and intentionally killed Gary Moore by shooting him with a handgun, causing his death. With respect to the conspiracy charge, the charging information alleged that Fosha and Wilson, with the intent to murder Moore, agreed with each other to kill him and that Wilson shot Moore as an overt act in furtherance of the agreement. The jury was instructed that to convict Fosha of murder, the State had to prove that he (1) knowingly and intentionally (2) killed (3) another human being. The jury was also instructed on accomplice liability. The jury instructions regarding conspiracy stated that the evidence must prove that the defendant (1) agreed with Lance Wilson to commit the

crime of murder (2) with intent to commit the crime, and (3) Lance Wilson performed an overt act in furtherance of the agreement by shooting at and against Gary Moore by means of a deadly weapon, that is, a handgun. Given that the jury was instructed that Fosha could be found guilty of murder as Wilson's accomplice, the Supreme Court held that a reasonable possibility existed that the evidentiary facts used by the jury to establish the essential elements of the conspiracy charge (the defendant, intending to murder, agreed with Wilson, and Wilson shot Moore) were also used to prove the essential elements of murder (the defendant intended to murder Moore and was an accomplice to Wilson's shooting of Moore). *Id.* at 553.

 Turning now to the facts in the case before us, we too conclude that the prohibition against double jeopardy was violated. While there were significant and detailed facts presented to the jury with regard to all of the events constituting the planning of the robberies, the jury was instructed to focus upon the actual events of the robbery as the overt act of conspiracy. From a comparison of the jury instructions, we conclude that there is a reasonable possibility that the jury relied upon the same facts—that Holden provided the handgun and waited for one of the cohorts to commit the robbery—for both the robbery and conspiracy to commit robbery convictions.[5] Thus, we vacate both convictions for conspiracy to commit rob-

---

5. Although not presented by Holden, we note that the convictions also appear to violate one of the long adhered to series of rules of statutory construction and common law that are often described as double jeopardy. Specifically, in *Guyton v. State,* 771 N.E.2d 1141, 1143 (Ind.2002), our Supreme Court noted that conviction and punishment for the crime of conspiracy where the overt act that consti-

tutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished constitutes a double jeopardy violation. As an example, the court noted a charge in which the overt act for the conspiracy is no more than the crime itself. *Id.* That occurred in this case in that the overt act was alleged to be the robbery.

bery, leaving the convictions for robbery in place.

## IV

### Sentencing

Holden makes several arguments related to the propriety of the sentence he received. He claims that the trial court considered an improper aggravating factor, that the sentence was inappropriate, and that the sentencing scheme used in this case violates the rule of law explicitly announced in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Because the alleged *Blakely* violation will directly impact the remaining claims with regard to sentencing, we address it first.

In *Blakely,* the United States Supreme Court applied the rule set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Relying upon this principle, the Court held that the sentencing scheme at issue in *Blakely* violated the petitioner's Sixth Amendment right to a trial by jury. —— U.S. at ——, 124 S.Ct. at 2543. The crux of the decision in *Blakely* appears to turn upon what constitutes the "statutory maximum" sentence. The Court noted that precedent made clear that the " 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by the defendant."* *Id.* at 2537 (emphasis in original). The Court then clarified the "statutory

maximum" by stating that it "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict standing alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' ... and the judge exceeds his proper authority." *Id.*[6] However, when a defendant enters a guilty plea, the State is free to seek judicial enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial fact finding. *Id.* at 2541.

 Holden alleges that none of the aggravating factors found by the trial court were found by the jury or admitted by him. However, we note that the trial court concluded that Holden's significant and consistent adult and juvenile criminal history was an aggravating factor. According to *Blakely,* this factor need not be determined a second time by a jury. *Id.* at 2536. From Holden's criminal history, the trial court also determined that the type of offenses were increasingly becoming more severe. This conclusion also does not trigger a *Blakely* analysis. Finally, the trial court took notice of the fact that Holden had just committed another bank robbery in Switzerland County and that he pleaded guilty to that charge. Once again, this aggravator is outside of the scope of *Blakely* review.

 The other aggravating factors relied upon by the trial court include a recitation of facts relating to the particular robberies for which Holden was tried and what they demonstrated about Holden's character, and the trial court's determination that Holden was in need of rehabilita-

---

**6.** It is our conclusion from this discussion in *Blakely* that the "statutory maximum" sentence of that case equates with the presump-

tive sentence called for by the applicable Indiana statute.

tive treatment best provided by commitment to a penal facility.[7] Because *Blakely* is superficially applicable to a sentence greater than the presumptive, it would appear that the finding made with relation to the facts of the crime could be violative of the *Blakely* holding because it does not appear that the jury made findings with regard to the specific facts found and there is no allegation that Holden admitted to those facts. However, because the trial court relied upon three different aggravators, we conclude that there is no reasonable possibility that the complained of aggravators contributed to the sentence. *Cf. Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (federal constitutional errors are harmless when there is no reasonable possibility that the evidence complained of might have contributed to the verdict).

In his claim that the trial court had considered an improper aggravator, Holden challenges the trial court's consideration of the fact that Holden had supplied drugs to his cohorts in crime as enticement to rob the banks. Given that we have concluded that the fact is one of those facts related to the crime upon which we do not need to rely to uphold the sentence, we do not address Holden's claim of error with regard to that aggravator.

 Holden's final claim is that the sentence he received is inappropriate. In making this argument, he directs this court's attention to the fact that the two codefendants in the case received sentences considerably shorter than the sentence he received. Specifically, he claims that Turner received a ten-year sentence and Harvey received a five-year sentence.

Then, he relies upon the fact that they both have criminal records and are the individuals who actually robbed the banks and committed the dangerous acts of pointing the handgun at individuals inside the banks in asserting that the sentence he received is disproportionate to the sentences they received.

A sentence which is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *Kien v. State,* 782 N.E.2d 398, 416 (Ind.Ct.App.2003), *trans. denied.* Here, the sentence Holden received is not inappropriate in light of his character. He has accumulated a significant criminal history at a young age, has continued to increase the severity of his offenses, and it appears he was developing the habit of robbing banks. While it is true that the sentence he received is much more severe than that of the codefendants, the fact remains that the two codefendants pleaded guilty and cooperated with the State in its pursuit of Holden. These are factors which are appropriately considered as mitigating circumstances and which may have contributed to the shorter sentences which Turner and Harvey received.

We reverse the two convictions for conspiracy to commit robbery and remand to the trial court to vacate those convictions. Upon all other grounds, the judgment is affirmed.

MAY, J., and VAIDIK, J., concur.

---

**7.** The trial court's use of the aggravator that Holden was in need of rehabilitative treatment which could be provided by commitment to a penal facility is improper because it was merely a "perfunctory recitation" of an aggravating factor. *See Ingle v. State,* 766 N.E.2d 392, 395 (Ind.Ct.App.2002), *trans. denied.* While the trial court did state that this was based upon Holden's criminal history, it did not explain why the circumstance was aggravating, i.e. that prior attempts at rehabilitation had proved unsuccessful.