Jason PATRICK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–0407–CR–312.

Court of Appeals of Indiana.

Dec. 23, 2004.

Neil L. Weisman, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In February 2004, Jason Patrick pleaded guilty to Murder; Battery, as a Class B felony; and Criminal Confinement, as a Class C felony. Following a sentencing hearing, the trial court identified mitigating and aggravating circumstances and sentenced Patrick to the maximum term of ninety-three years. Patrick now appeals and raises a single dispositive issue for review: whether his sentence violates the Sixth Amendment under *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.*

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY[1]

On July 7, 2002, nineteen-year-old Patrick had ten-year-old Evan Parker "come into the house that [Patrick] sometimes stayed at, 2516 W. Linden Street in South Bend." Appellant's App. at 709. Patrick

---

1. The facts relevant to Patrick's offenses are taken solely from Patrick's guilty plea hearing, and for reasons discussed *infra,* we have presented the facts, where possible, as Patrick admitted them at that hearing.

then forced Parker into the basement of the house. At the time, Patrick was angry with Parker "from another instance." *Id.* Patrick used his fist to hit Parker in the head and face, which caused Parker bruising, contusions, and extreme pain and resulted in serious bodily injury. Patrick also used a knife to stab Parker at least twice, knowing that the manner in which he used the knife was likely to cause death. Patrick then left Parker confined in the basement. Parker was conscious when police officers discovered him, but he later died as a result of his injuries.

On July 10, 2002, the State charged Patrick with murder; battery, as a Class B felony; criminal confinement, as a Class B felony; and battery, as a Class C felony. In November 2002, the State filed a death penalty request. In July 2003, Patrick moved to dismiss the death penalty request on grounds that he is mentally retarded. Following a three-day hearing, the trial court found Patrick to be mentally retarded and dismissed the State's request for the death penalty.

In February 2004, Patrick entered into a guilty plea in which he agreed to plead guilty to murder, Class B felony battery, and Class C felony confinement. The agreement left sentencing to the trial court. During a guilty plea hearing, the trial court established a factual basis for all three offenses, accepted the plea agreement, and scheduled a sentencing hearing for the following month.

The parties appeared for sentencing on March 15, 2004. At that hearing, Parker's mother and aunt both testified and asked that the trial court impose the maximum sentence. Dr. Joseph Prahlow, a forensic pathologist, testified regarding Parker's injuries and cause of death. Dr. Prahlow stated that Parker died as a result of two stab wounds, but he also explained that Parker had sustained "many very superfi-

cial or shallow cutting wounds on many parts of his body." *Id.* at 757. Specifically, Dr. Prahlow stated that "[t]here [was a] cluster of seven superficial puncture wounds or stab wounds on [Parker's] left cheek area." *Id.* at 758. According to Dr. Prahlow, the superficial wounds suggested "some type of taunting or torture-like activity." *Id.* at 760.

Dr. Gregory Hale, a licensed psychologist, testified that he administered a Minnesota Multi–Phasic Personality Inventory ("MMPI–II") test on Patrick, which showed that Patrick had a "fairly pathological or mal-adjusted profile." *Id.* at 768. He explained that Patrick's profile was not frequently seen, especially in persons his age. He stated that his profile "reflects things like anger, hostility, dislike for authority figures, unhappiness related to family experiences, suspiciousness, distrust, inability to really form good meaningful relationships, very easily hurt, suspects other people are going to hurt him, even before they do." *Id.* Dr. Hale also stated that it would be difficult to treat Patrick because he "is not somebody who bonds very well with people, and the moment as if he feels the relationship is not going in his way, he becomes angry and will push away." *Id.* at 771.

Patrick presented one witness at the hearing, Manette Zeitler, who is a mitigation specialist. Zeitler testified that Patrick grew up in South Village, Illinois, and that his parents kept him and his six siblings locked in the house, either in their rooms or in the basement. The children did not attend school, had no medical records, and abused alcohol and marijuana with their parents. Patrick and his siblings were verbally, physically, and sexually abused in their home. Zeitler submitted to the trial court an eleven-page report containing her findings, which included information she had received from Patrick's

siblings. In addition to Zeitler's testimony, Patrick's counsel read a letter Patrick had written to the court in which he expressed remorse for what he had done.

At the conclusion of the evidence, the trial court announced its sentence from the bench. In particular, the court first explained that because of its prior determination that Patrick is mentally retarded, the court was precluded under Indiana law from either imposing the death penalty or sentencing Patrick to life in prison without parole. The court explained that the "range of sentence in this case is ... anywhere from forty-five to ninety-three years." *Id.* at 811. Next, the trial court stated in relevant part:

The law requires that I consider in reaching any sentencing decision those criteria for sentencing that [are] set forth in [Indiana Code Section 35–38–1–7.1(a)]. The law in that statute also says that I may consider as aggravating factors those circumstances in sub-section B, and those circumstances in sub-section C, as mitigating factors.

Dealing with the first list, I have and am, considering the risk that Mr. Patrick will or may commit another crime;

I am and will, consider the nature and circumstances of this crime;

I am and will, consider Mr. Patrick's prior criminal record, character, condition;

Number four, the victim of the crime was less than 12 years of age is a factor that has to be considered[;] it is a factor that is an element in two of the offenses, however.

\* \* \*

The seventh factor in that statute, any oral or written statement made by the victim of the crime, I have also considered that.

Aside from that, I have thought about and reviewed and will consider the testimony which was adduced at the mental retardation hearing on December 16, 17 and 18. I believe that is an important component to consider.

I have also considered Dr. Courtney's report, Dr. Figueroa's report and Dr. Hale's report, as were prepared in late January of this year as [they relate] to the competency issue.

I've considered the video taped statements that were introduced during the course of the hearing on mental retardation, specifically those statements that were made by the defendant, himself. And I have ... it goes without saying, but I'll say it anyway, I've considered all of the testimony that I've heard today, the photographs, Ms. Zeitler's report, [eleven-page] report, and the information contained in the pre-sentence report itself.

I do realize in dealing with the mitigating factors, that there are mitigating factors that need to be recognized and addressed and talked about.

*The Court did, based upon the testimony at the mental retardation hearing, find that under Indiana [l]aw the defendant is a mentally retarded person, and I've already dealt with that. And that is a factor which I believe has to be considered as a mitigating factor.*

I have looked at and thought about ... what type of a family life Mr. Patrick had, and how that led him to be where he is today.

\* \* \*

*I do find that that was his upbringing, the experience he had in his home, his lack of education, and the sort of things that have been testified to from day one in this case through today, are matters which I must also consider in mitigation.*

As it relates to the acceptance of responsibility, I'm aware of the law in this state, that essentially requires a court to consider as a matter of mitigation, that a plea was entered....

* * *

In this case, I do note that even though that is the goal of that mitigating factor, that it took [one and one-half years] to resolve this case, that the plea was not to everything that was originally charged in the case. And that the victim's family has expressed, particularly Ms. Parker, her wish that life without parole or the death penalty would be imposed, which seems to me to mean that the victim's [family's] preference from day one would have bee[n] to prosecute the case fully to the maximum extent allowed.

*I think that those things weigh a little bit in mitigating of the mitigation of the plea, but I do take the plea into consideration in doing this.*

I have also considered both in mitigation and in aggravation, the psychological difficulties that Mr. Patrick may, and in fact[,] does face.

* * *

*I also do note Mr. Patrick's relative young age, that is 19 at the time that this offense occurred, and 21 at the date of sentencing, today.*

* * *

And there are I guess on the other side aggravating factors that I must consider, and I do consider.

*It is true that Mr. Patrick does not have much of a criminal history, and that the criminal history that he has is certainly insignificant as it relates to these offenses.* But I suppose almost any criminal history is insignificant [compared] to these types of offenses. But it is nonetheless something which I must consider.

The defendant does have a prior conviction, I'm assuming it's of a misdemeanor type [or] nature, it's called retail theft, I guess, in Cook County. We would probably call it conversion in this state.

But nonetheless there was a conviction noted in the pre-sentence report which occurred on April 24, 2002. *That conviction in and of itself, is an aggravating factor that I consider.*

As is the fact that on June 3, 2002, the pre-sentence report indicates that Mr. Patrick was sentenced to twelve months supervision, which I'm assuming means probation. *Which means that Mr. Patrick was on probation at the time that he committed this offense, and had only been on probation a little over a month from that case at the time that he committed this offense.*

* * *

With respect to Counts II and III, the age of the victim is something which is already taken into account in the charge itself. And that being an element, I cannot consider that as an aggravating factor.

That's different with respect to Count I, the murder, however, because there is no age which is relevant. *And so the age of this child at the time he was killed, namely ten years of age, is an aggravating factor as it relates to the murder offense.*

* * *

*The perhaps two overriding things that concern me in this case, are number one, a conclusion that I draw from the evidence that I've heard since December. And that has to do with the risk that Mr. Patrick will commit an additional or other crimes.*

I think about that in terms of the psychological background of the current psychological condition, of the inability

really I think to treat Mr. Patrick in any meaningful way, and the nature of these crimes as committed.

And it seems to me that there is a substantial risk, or even a likelihood that Mr. Patrick, given the psychological background, given what happened on [July 7, 2002,] that he would commit crimes and that he is a dangerous person.

*Perhaps[,] however, the thing that concerns me the most as it relates to aggravation, is ... the nature and circumstances of this offense.*

\* \* \*

The testimony of Dr. Prahlow is enlightening, in that ... and it's difficult for me to put into words what I mean by this. We never accept as acceptable any force used against another person. We never accept shooting somebody in the head as acceptable force. And if you would say to a victim's family ... at least the victim died quickly in that situation, it would be of little solace.

But in this situation the force that was inflicted on this child was substantially in excess of that which would have been required had Mr. Patrick simply intended to kill him.

The force, as Dr. Prahlow said it in the nature of the injuries, really indicated an intent to inflict ... I want to get his words here. He used the word "torture," he used the word "torment," which may really be a more precise word.

*Id.* at 811–21. The court identified the nature and circumstances of the crime as aggravating for the murder and battery charges and found the nature of Parker's injuries as aggravating for the confinement charge. Relying on Dr. Hale's testimony, the court also found as aggravating that Patrick "appreciated the wrongfulness of his conduct, and ... could have and should have conformed his conduct to that required not only by the law, but what might be called just basic human decency." *Id.* at 823. The court then found that the aggravating factors outweighed the mitigating factors and imposed terms of sixty-five years on the murder conviction, twenty years on the battery conviction, and eight years on the confinement conviction.[2] The court ordered Patrick to serve those terms consecutive to each other for a maximum sentence of ninety-three years. This appeal ensued.

## DISCUSSION AND DECISION

Patrick asserts that his "aggravated and consecutive sentence" violates his Sixth Amendment right to have the facts supporting the enhancement of his sentence tried to a jury. Brief of Appellant at 1. Specifically, he claims that two aggravating factors which the trial court identified as "overriding" at sentencing are improper under our United States Supreme Court's decision in *Blakely*. The State responds that *Blakely* does not apply to the trial court's decision to impose consecutive sentences and that a single, valid aggravating factor is sufficient to support the trial

---

**2.** A person who commits murder shall be imprisoned for a fixed term of fifty-five (55) years, with not more than ten (10) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances. Ind.Code § 35–50–2–3. A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances. Ind.Code § 35–50–2–5. A person who commits a Class C felony shall be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances.

court's sentence. We discuss those arguments in turn.[3]

■ The determination of the appropriate sentence rests within the discretion of the trial court, and we will not reverse the trial court's determination absent a showing of manifest abuse of that discretion. *Bacher v. State*, 722 N.E.2d 799, 801 (Ind.2000). In *Blakely*, however, the United States Supreme Court held that the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase the sentence for a crime above the presumptive sentence assigned by the legislature. *Krebs v. State*, 816 N.E.2d 469, 475 (Ind.Ct.App.2004) (citing *Blakely*, 124 S.Ct. at 2536). Specifically, in *Blakely*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2536 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The Court defined the "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 2537 (emphasis in original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* (emphasis in original). "Accordingly, it appears our trial courts no longer have discretion to sentence a criminal defendant to more than the presumptive sentence unless the defendant waives his right to a jury at sentencing, a jury first determines the existence of aggravating factors, or the

defendant has a criminal history." *Krebs,* 816 N.E.2d at 475. When a defendant enters a guilty plea, the State is free to seek judicial enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. *Blakely,* 124 S.Ct. at 2541.

■ Initially, we agree with the State that *Blakely* does not apply to the trial court's decision to impose consecutive sentences. In *Cowens v. State,* 817 N.E.2d 255, 2004 WL 2384464, at *1 (Ind.Ct.App. October 6, 2004), a panel of this court determined in an opinion on rehearing that. "*Blakely* is not implicated in the situation where a trial court orders consecutive sentences based upon its discretion as granted by Indiana Code [Section] 35–50–1–2(c)[.]" Thus, Patrick's constitutional rights were not violated to the extent that the trial court imposed consecutive terms.

Regarding the validity of the aggravating factors, Patrick concedes that at least two of the aggravating factors identified by the trial court were proper under *Blakely,* namely, his criminal history, which need not be determined by a jury under *Blakely* and *Apprendi,* and Parker's age, a fact to which Patrick stipulated during the guilty plea hearing. And although neither party addresses it, the trial court also identified as aggravating that Patrick was on probation at the time he committed the instant offenses. In an opinion on rehearing in *Bledsoe v. State,* 815 N.E.2d 507, 508 (Ind.Ct.App.2004), this court concluded that the fact that the defendant was on probation at the time he committed the instant offense is derivative of the defendant's criminal history and, therefore, proper under *Blakely.* But see *Teeters v. State,* 817 N.E.2d 275, 279 (Ind.

---

**3.** We reject the State's arguments that (1) Patrick has waived his *Blakely* challenge, and (2) *Blakely* does not implicate Indiana's sentencing scheme, for the reasons set forth in *Strong v. State,* 817 N.E.2d 256, 258–62 (Ind. Ct.App.2004).

Ct.App.2004) (suggesting aggravating circumstances that defendant was on probation at the time of the offense is "problematic" under *Blakely,* but not deciding whether aggravator was improper where another valid, aggravating circumstance justified enhanced sentence). Following *Bledsoe,* the fact that Patrick was on probation at the time he committed the instant offense does not implicate *Blakely,* and, therefore, the trial court identified three valid aggravating factors.[4]

■ Although the trial court found that Patrick's criminal history was "insignificant," the court did not explain how much aggravating weight it had assigned to the victim's age and Patrick's probationary status. Appellant's App. at 817. But the trial court clearly identified two "overriding" aggravating factors, namely, the nature and circumstances of the crimes and the likelihood that Patrick would reoffend. We agree with Patrick that neither of those aggravators is based on facts either found by a jury or admitted by Patrick. *Id.* at 819. Indeed, the trial court's explanation of those aggravators shows that it relied on testimony and evidence other than those few, sparse facts Patrick admitted at his guilty plea hearing.

For example, Dr. Prahlow's testimony concerning the nature of Parker's injuries and his opinion that Patrick had tortured Parker prior to his death are facts that, since *Blakely,* must either be admitted by the defendant or determined by a jury. And Dr. Hale's testimony regarding Patrick's pathological tendencies and his opinion that Patrick was aware that what he was doing was wrong are facts that a trial judge no longer has discretion to find at sentencing absent stipulation or consent by the defendant. *See Blakely,* 124 S.Ct. at 2541. Therefore, we agree with Patrick

that the two "overriding" aggravating factors identified by the trial court, namely, the nature and circumstances of the crimes and the likelihood that Patrick will commit additional crimes, violate his Sixth Amendment rights under *Blakely.*

Still, the State maintains that "because a single aggravating circumstance is sufficient under Indiana law to authorize a maximum enhanced sentence, once such an aggravating factor is found by the jury (or admitted by the defendant), the trial court may impose a sentence above the presumptive without running afoul of *Blakely* even if the trial court has relied upon other facts not submitted to or found by the jury." Brief of Appellee at 16. In other words, the State contends that once a defendant admits, or the jury finds, a single aggravating factor consistent with *Blakely,* the "statutory maximum" becomes the maximum sentence authorized for that class of offense and affords the trial court discretion to make additional factual findings that do not comply with *Blakely.* We cannot agree.

The State's argument violates the critical holding in *Apprendi* that "[o]ther than the fact of a prior conviction, *any fact* that increases the penalty for a crime beyond the prescribed. statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). Moreover, the Court in *Blakely* applied the rule expressed in *Apprendi* to Washington's sentencing scheme, and nothing in *Blakely* supports the State's position that once one valid aggravator is either admitted by the defendant or found by the jury, the trial court has discretion to find additional aggravating factors on its own and use those additional factors to enhance a sentence. We conclude that because the trial court relied on two aggravating factors that

---

**4.** Patrick did not include a copy of his pre- sentence report in his Appendix.

were neither admitted by Patrick nor determined by a jury, his enhanced sentence implicates *Blakely* and violates the Sixth Amendment.

■ In *Holden v. State*, 815 N.E.2d 1049, 1060 (Ind.Ct.App.2004), this court applied a harmless error analysis to determine whether to reverse an enhanced sentence which was supported, in part, by aggravating factors that were improper under *Blakely*. In that case, we concluded that based on all of the valid aggravating factors, "there is no reasonable possibility that the complained of aggravators contributed to the sentence." *Id.* (citing as comparison *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (federal constitutional errors are harmless when there is no reasonable possibility that the evidence complained of might have contributed to the verdict)). Accordingly, we apply a harmless error analysis here.

■ Indiana Appellate Rule 66(A) provides that "[n]o error or defect ... in anything done ... by the trial court ... is ground for ... reversal on appeal where its probable impact ... is sufficiently minor so as not to affect the substantial rights of the parties." In the sentencing context, "[i]f one or more aggravating circumstances cited by the trial court are invalid, the court on appeal must decide whether the remaining circumstance or circumstances are sufficient to support the sentence imposed." *Merlington v. State*, 814 N.E.2d 269, 273 (Ind.2004). As this court explained in *Means v. State*, 807 N.E.2d 776, 788 (Ind.Ct.App.2004), *trans. denied:*

> Even one valid aggravating circumstance is sufficient to support an enhancement of a sentence. When the sentencing court improperly applies an aggravating circumstance but other valid aggravating circumstances exist, a

sentence enhancement may still be upheld. This occurs when the invalid aggravator played a relatively unimportant role in the trial court's decision, and other aggravating circumstances were sufficient to sustain the trial court's decision. When a reviewing court "can identify sufficient aggravating circumstances to persuade it that the trial court would have entered the same sentence even absent the impermissible factor, it should affirm the trial court's decision." When a reviewing court "cannot say with confidence that the permissible aggravators would have led to the same result, it should remand for re-sentencing by the trial court or correct the sentencing on appeal."

(Citations omitted).

We commend the trial court for its thorough sentencing statement, and we are mindful that the trial court made its decision to impose the maximum sentence of ninety-three years before the United States Supreme Court decided *Blakely*. But *Blakely* has required all courts to view sentencing through a new set of lenses. In this case, the trial court identified four mitigating factors: (1) Patrick's mental retardation; (2) his troubled childhood; (3) his young age; and (4) the fact that he pleaded guilty. Of those four mitigators, the trial court suggested that it gave the least weight to Patrick's decision to plead guilty.

As we have discussed, the trial court identified five aggravating factors: (1) Patrick's criminal history; (2) his probationary status at the time he committed the instant offense; (3) the victim's age (relevant to murder only); (4) the likelihood that he will re-offend; and (5) the nature and circumstances of the crimes. Of those aggravators, the court explained that Patrick's criminal history was "insignificant." Appellant's App. at 817. Indeed, Patrick

has only one misdemeanor conviction. The court also stated that the two "overriding" aggravating factors were the likelihood that Patrick will commit more crimes and the nature and circumstances of his offenses. *Id.* at 819. Those two aggravators are improper, and the sentencing statement shows that this is not a case in which the invalid aggravating circumstances played a relatively unimportant role in the trial court's decision. *See Means,* 807 N.E.2d at 788.

■ Additionally, given that the two primary aggravating circumstances are invalid, combined with the existence of four mitigating factors, we cannot say with confidence that the remaining permissible aggravators would have led to the same result. *See id.* In other words, we are not confident that the trial court would have imposed the maximum sentence of ninety-three years if it had not considered the nature and circumstances of Patrick's offenses and the likelihood that Patrick will re-offend. Moreover, given the trial court's familiarity with this case, including Patrick's mental limitations, and the severity of the crimes committed, we are not in a position to revise Patrick's sentence on appeal.[5] We therefore reverse and re-

mand for re-sentencing in light of the valid aggravators and mitigators.[6]

Reversed and remanded.

VAIDIK, J., concurs in part with separate opinion.

KIRSCH, C.J., concurs in part and dissents in part with separate opinion.

VAIDIK, Judge, concurring in part.

I concur in result. I part ways with the majority's conclusion that *Blakely* is not implicated as to the aggravator that Patrick was on probation at the time he committed the instant offense. The majority reaches this conclusion, pursuant to *Bledsoe,* by finding that this aggravator is derivative of Patrick's criminal history.

One cannot be on probation without having been convicted of a crime; thus, being on probation infers that one has a criminal record. In this sense, the act of being on probation is derivative of criminal history. The opposite—someone with a criminal record must currently be on probation or have been on probation at some point in his life—is not necessarily true. Similarly, whether someone is on probation on a given day, which is fundamental to the

---

5. Because we have reversed Patrick's sentence on Sixth Amendment grounds, we need not address his sentencing arguments under Article I, Section 19 of the Indiana Constitution and Indiana Appellate Rule 7(B).

6. The State asserts that we should remand to the trial court for a jury determination on the aggravating circumstances. In support, it directs us to *Lawrence v. State,* 259 Ind. 306, 286 N.E.2d 830 (1972), in which our supreme court created the bifurcated trial procedure for habitual offender enhancements, which was later enacted by the legislature. But *Lawrence* did not involve sentencing. It is well-settled that when a trial court relies on improper aggravating factors, and the reviewing court cannot say with confidence that the permissible aggravators would have led to the same result, it should remand for re-sentenc-

ing by the trial court or correct the sentencing on appeal. *See Means,* 807 N.E.2d at 776; *see also Sherwood v. State,* 749 N.E.2d 36, 39–40 (Ind.2001) ("Where we find an irregularity in a trial court's decision, we have the option to remand to the trial court for a clarification or new sentencing determination; to affirm the sentence if the error is harmless; or to weigh the proper aggravating and mitigating circumstances independently at the appellate level."). Again, because we cannot say with the confidence that the trial court would impose the same sentence without considering the improper aggravators, and the trial court in this case is in the best position to balance the aggravators and mitigators, we remand for re-sentencing in light of the remaining aggravating factors.

aggravator in question above, is a question of fact that is not derivative of criminal history. In some cases, whether a defendant is on probation on a certain day is not entirely clear. *See, e.g., Kopkey v. State,* 743 N.E.2d 331, 339 (Ind.Ct.App.2001) ("A defendant's 'probationary period' begins immediately after sentencing, even if his or her actual probation begins at a later date."). In sum, the fact that someone has a criminal history does not mean that that individual was on probation on a certain day. Therefore, I think that the aggravator at issue here—that Patrick was on probation at the time of the offense—is a "fact" that must be admitted by Patrick or that a jury must find beyond a reasonable doubt.

KIRSCH, Chief Judge, concurring in part and dissenting in part.

I fully agree with the holding of the majority that the decision of the United States Supreme Court in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied,* implicates Indiana's sentencing scheme, but I believe that the Patrick failed to preserve the issue for appellate review by failing to object at the time of sentencing. I, therefore, respectfully dissent and would affirm the decision of the trial court in all respects.