**Charles JACK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–0609–CR–451.

Court of Appeals of Indiana.

July 18, 2007.

Transfer Denied Sept. 13, 2007.

Gregory Paul Kauffman, South Bend, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Defendant–Appellant Charles Jack appeals his convictions of and sentence for murder, a felony (Ind.Code § 35–42–1–1; Ind.Code § 35–41–2–4), and of conspiracy

to commit murder, a Class A felony (Ind. Code § 35-41-5-2). We affirm.

Jack raises two issues for our review, which we restate as:

I. Whether separate convictions for murder and conspiracy to commit murder violate the Double Jeopardy clause of the Indiana Constitution.

II. Whether the sentence imposed by the trial court was appropriate.

In the summer of 2005, Prince Rodjrell Yamobi, also known as Roderick Wright, was serving the sixteenth year of a murder sentence; however, Yamobi's incarceration did not prevent him from running, through use of cell phones and prison visits by Jack, a criminal enterprise involving extortion, drugs, and prostitution. Jack was a lieutenant in the organization, which included another member named Dimitrick Teague.

During the summer of 2005, Jack drove from his South Bend home to Indianapolis to meet with Dejaun Flynn. Flynn needed money and joined Yamobi's organization in South Bend, where he reported to and lived with Jack. Although Flynn was initially hired to assist in the sale of illegal substances, he subsequently took on the added responsibility of organization enforcer. In doing so, he used a gun provided by Jack.

That same summer, while Flynn and Jack worked together picking up drugs and delivering them for sale in South Bend, Teague was also selling drugs for the organization. At some point, Jack received a call from Yamobi, handed the phone to Flynn, and Yamobi authorized Teague's murder.

On or around the evening of June 21, 2005, Jack called Teague and told him that he needed Teague to drive him to a drug deal. Teague picked up both Jack and Flynn, with Jack sitting in the backseat and Flynn sitting in the front passenger seat. Jack had considered whether to have Flynn shoot Teague at the Miami Hills Apartments but determined that the murder might be recorded on surveillance cameras; instead, he instructed Teague to drive to a location near the South Bend Motel. Once the car was parked near the motel, Jack exited the car. As Jack did so, he tapped Flynn on the shoulder, an act which Flynn interpreted as a cue to shoot Teague.

Flynn hesitated in shooting Teague, and Jack, who had walked away from the car, looked "back around the corner" to make sure that Flynn committed the murder. Flynn then shot Teague twice in the body and once in the head.

Flynn walked to where Jack was standing, and the pair walked to the motel. Jack told a local prostitute and her customer that he and Flynn needed a ride in the customer's car because someone had been shooting at them. When the customer refused to give them a ride, Jack secured a ride with Jose Cruz, also known as Cito. After giving the gun to Jack, Flynn took a bus back to Indianapolis. Jack initially buried the gun in his backyard, but he was later arrested after Yamobi, who was cooperating with the investigation of the murder, convinced Jack to sell the gun to an undercover officer.

Jack was subsequently arrested and charged with murder (aiding, inducing, and/or causing Teague's murder) and conspiracy to commit murder. A jury found Jack guilty on both counts, and the trial court sentenced him to sixty years on the murder conviction and forty years on the conspiracy conviction, with the sentences to run consecutively. Jack now appeals.

## I.

■ Jack contends that his separate convictions for murder and conspiracy to

commit murder violate the Double Jeopardy Clause of the Indiana Constitution. Specifically, Jack contends that the same actual evidence was used to prove the essential elements of both offenses.

■ In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), our supreme court held that two tests apply to determine whether two or more offenses constitute the same offense under our Double Jeopardy Clause—the statutory elements test and the actual evidence test. Jack is claiming a violation under the actual evidence test, and in a challenge under that test, "the appellant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may have also been used to establish the essential elements of a second challenged offense." *Holden v. State*, 815 N.E.2d 1049, 1057 (Ind.Ct.App.2004), *trans. denied*. In applying the actual evidence test, the reviewing court must identify the essential elements of each offense and evaluate the evidence from the jury's perspective. *Id.* The reviewing court considers the relevant jury instructions, the arguments of counsel, and other factors which may have guided the jury's determination. *Id.*

The essential elements of the offense of aiding, inducing, or causing murder are: (1) the defendant (2) knowingly or intentionally (3) aided, induced, and/or caused (4) another person (5) to intentionally kill another human being. Ind.Code § 35–42–1–1; Ind.Code § 35–41–2–4. The essential elements of conspiracy to commit murder are: (1) the defendant (2) agreed with one or more other persons to commit murder (3) with intent to commit murder and (4) the defendant or one of the persons to the agreement performed an overt act in furtherance of the agreement. Ind.Code § 35–41–5–2; *Redman v. State*, 743 N.E.2d 263, 267 (Ind.2001).

Here, the trial court instructed the jury, in accordance with the aforementioned statutes and the charging information on the murder charge, that the State had the burden to prove that on or about June 22, 2005, Jack "did knowingly or intentionally aid, induce ·or cause another person, Terrance D. Flynn, to intentionally kill another human being, to-wit: Dimitrick Teague, by shooting him, causing him to die." Appellant's Transcript at 519. The trial court instructed the jury, in accordance with the aforementioned statute and the charging information on the conspiracy charge, that the State had the burden to prove that on or about June 22, 2005, Jack "did agree with [Flynn] to commit the crime of murder, that is the intentional killing of another human being, [Teague]." *Id.* The instruction identified three overt acts in furtherance of the conspiracy: (1) Jack had a conversation with Yamobi and Flynn where they planned Teague's death; (2) Jack secured a firearm to perform the shooting; and (3) Jack phoned Teague to set up the trip to the South Bend Motel so that Flynn could kill Teague. *Id.* at 519; 529–30.

The instant case is similar to *Griffin v. State*, 717 N.E.2d 73 (Ind.1999), *cert. denied*, 530 U.S. 1247, 120 S.Ct. 2697, 147 L.Ed.2d 968 (2000). In *Griffin*, the defendant was convicted of both robbery and conspiracy to commit robbery, and he argued that the convictions could not stand under the Indiana Constitution's Double Jeopardy Clause. *Id.* at 88. The court cited *Richardson* for the proposition that the actual evidence presented at trial must be examined "to determine whether each challenged offense was established by separate and distinct facts." *Id.* (citing *Richardson*, 717 N.E.2d at 52). The court noted that the jury was instructed that the charge of conspiracy to commit robbery could be established by various alleged

overt acts and that the trial evidence established numerous other acts that constituted robbery. *Id.* The court emphasized that "[t]o establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote." *Id.* The court concluded that the convictions were not the same offense; thus, there was no double jeopardy violation. *Id.*

In the instant case, the evidence presented at trial established that Jack entered into an agreement with Yamobi and Flynn to kill Teague. In furtherance of that agreement, Jack phoned Teague and tricked him into driving Jack and Flynn to the location where Jack had determined Teague would die from bullets fired by the gun provided to Flynn. Other evidence presented at trial established that Jack aided, induced, and/or caused the murder by (1) convincing Flynn not to commit the murder within the range of Miami Hills' cameras; (2) encouraging an apparently reluctant Flynn to pull the trigger by looking "back around the corner"; (3) securing transportation away from the murder scene; and (4) by first burying and then selling the handgun used to kill Teague. In view of the jury instructions and the evidence presented, we find no sufficiently substantial likelihood that the evidentiary facts used by the jury to establish the essential elements of aiding, inducing, or causing murder may have also been used to establish the essential elements of conspiracy to commit murder.

## II.

■ Jack contends that the 100-year sentence imposed by the trial court is inappropriate. Specifically, he argues that although the offenses he committed were

very serious, he is not one of the worst offenders and he did not commit the worst of offenses. He also argues that his sentence is inappropriate in light of Flynn's plea-bargained fifty-year sentence.

The trial court sentenced Jack to sixty years for murder and forty years for conspiracy, with the sentences to run consecutively. The sixty-year sentence is five years above the advisory term for murder and the forty-year sentence is ten years above the advisory term for conspiracy. *See* Ind.Code § 35–50–2–3; Ind.Code § 35–50–2–4. In imposing the consecutive sentences, the trial court noted as aggravating circumstances that Jack had an extensive juvenile record [1] and that Jack was engaged in a continuous conspiracy to sell illegal substances prior to, during, and after the conspiracy and subsequent murder of Teague. The trial court noted that Jack used his position of authority and trust within a criminal enterprise to set-up Teague and that Jack facilitated the murder as part of the criminal exercise. The trial court termed Jack's involvement in an ongoing criminal enterprise as significant. As mitigating factors, the trial court noted that Jack (1) had an attention deficit disorder; (2) left family behind; (3) did not pull the trigger; and (4) in his own way, expressed remorse.

As a general rule, sentencing decisions are left to the sound discretion of the trial court, and the decisions will not be disturbed absent an abuse of discretion. *Creager v. State,* 737 N.E.2d 771, 781 (Ind. Ct.App.2000), *trans. denied.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances of the case.

---

1. Jack has misdemeanor convictions as an adult for driving while suspended. The trial judge stated that these convictions "mean

nothing to me in this sentence." Sentencing Transcript at 49.

*Groves v. State,* 823 N.E.2d 1229, 1231 (Ind.Ct.App.2005).

■■ A sentence authorized by statute will not be revised unless the sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B). We must refrain from merely substituting our opinion for that of the trial court. *Sallee v. State,* 777 N.E.2d 1204, 1216 (Ind.Ct.App. 2002), *trans. denied.* In determining the appropriateness of a sentence in light of the "very worst offense and offender" argument, we must concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on the nature, extent, and depravity of the offense for which the defendant was sentenced, and what it reveals about the defendant's character. *See Groves,* 787 N.E.2d at 409 (citing *Watson v. State,* 776 N.E.2d 914, 922 (Ind.Ct.App.2002); *Brown v. State,* 760 N.E.2d 243, 247 (Ind.Ct.App. 2002), *trans. denied*). The trial court's discretion extends to the determination of whether to increase presumptive penalties, impose consecutive sentences on multiple convictions, or both. *Davies v. State,* 730 N.E.2d 726, 741 (Ind.Ct.App.2000), *trans. denied, cert. denied,* 532 U.S. 945, 121 S.Ct. 1410, 149 L.Ed.2d 352 (2001).

As the trial court emphasized in its sentencing statement, Jack entered into the conspiracy and then facilitated Teague's murder as part of a continuing conspiracy to sell illegal substances. Although Flynn pulled the trigger, the murder would not have occurred without Jack's planning of the murder, the conspiracy to commit the murder, the set-up of the victim, and assistance to facilitate Flynn's escape.

With reference to Jack's character, we note that Jack's full-time job was breaking the law. In performing his job, he planned and facilitated Teague's murder. Given the facts surrounding both the planning and accomplishment of this murder, we cannot say that the trial court abused its discretion in imposing the sixty- and forty-year sentences or in ordering those sentences to run consecutively.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.