Cynthia AVERITTE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0405–CR–276.

Court of Appeals of Indiana.

April 8, 2005.

**1284**

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Cynthia Averitte ("Averitte") appeals her sixty-year sentence for murder.[1] We affirm.

### Issue

Averitte raises one issue, which we restate as whether the trial court committed fundamental error when it accepted her jury trial waiver because the trial court failed to advise her that she had the right to a have a jury determine, beyond a reasonable doubt, all facts legally essential to her sentence pursuant to the Sixth Amendment.

### Facts and Procedural History

On November 2, 2002, Averitte and her stepfather, Ronald Kilbert ("Kilbert"), got into an argument regarding Kilbert's treatment of Averitte's children. As the argument escalated, Kilbert hit Averitte in the head with a cup. Averitte struck back and, with the help of her sister Andrea, wrestled Kilbert to the ground. Andrea gave Averitte a gun and Averitte directed Andrea to turn up the volume on the stereo, while she shot Kilbert twice in the head.

After the shooting, Averitte removed the clothing from Kilbert's body and wrapped the body in a blanket or a tarp. Averitte, Andrea, and a third sister, Carolyn, then placed Kilbert's body into a car and transported it to a park in Indianapolis. There, Averitte directed her sisters to remove Kilbert's body from the car and burn it, while she remained in the car and acted as a "lookout," i.e., to warn of passers-by.

---

1. Ind.Code § 35–42–1–1.

Subsequently, Averitte returned to Kilbert's house, where she mopped and waxed the floors. At Averitte's request, Carolyn took the car to a carwash and cleaned it out by, first, "throw[ing] everything away" and, second, vacuuming the seats and floors. Tr. at 158. When Carolyn left the carwash, she drove over Fall Creek and asked a friend—who was a passenger in the car—to dispose of certain items that came from a man's wallet.

On November 7, 2002, the State charged Averitte with murder, assisting a criminal as a Class C felony,[2] carrying a handgun without a license as a Class A misdemeanor,[3] and confinement as a Class D felony.[4] On February 4, 2004, Averitte executed a Waiver of Trial by Jury. After conducting a bench trial, the trial court found Averitte guilty of murder and of carrying a handgun without a license. The trial court sentenced Averitte to the Indiana Department of Correction for a period of sixty years for the murder conviction and one year for the carrying a handgun without a license conviction,[5] to be served concurrently. In so doing, the trial court found one mitigating circumstance—that Averitte had "learning disabilities and mental or perhaps emotional limitations"[6]—and four aggravating circumstances—(1) the method that Averitte used to dispose of Kilbert's body; (2) that Averitte violated a position of trust; (3) that Averitte "orches-

trated a conspiracy in silence;" and (4) that the murder of Kilbert resulted in monetary gain to Averitte's mother. *Id.* at 364–65. Concluding that the aggravating circumstances outweighed the mitigating circumstance, the trial court enhanced Averitte's sentence for murder from the presumptive term of fifty-five years to sixty years.[7] This appeal ensued.

### Discussion and Decision

■ On appeal, Averitte argues that the jury trial waiver, which she executed on February 4, 2004, "was not made knowingly because she was not informed of the consequence of her waiver [with respect to] the jury's role in sentencing." Appellant's Br. at 5. As a result, Averitte's argument continues, the waiver was ineffective and her cause must be remanded for a new trial. *Id.* With this latter contention, we disagree. Indeed, we find nothing in the jury trial waiver itself, nor does Averitte point us to any evidence, that would suggest that it was not made knowingly and voluntarily. *See id.* at 7 ("[Averitte] does not contend that her waiver was involuntary, or that she lacked the capacity to understand it."). Accordingly, before we address the merits of Averitte's argument regarding the trial court's failure to advise her of the right to have a jury determine the facts essential to her sentence, we note that Averitte is not entitled to a new trial.

2. Ind.Code § 35–44–3–2.

3. Ind.Code § 35–47–2–1.

4. Ind.Code § 35–42–3–3.

5. The trial court did not enhance Averitte's carrying a handgun without a license conviction. Indeed, Indiana Code Section 35–50–3–2 provides, in pertinent part:
 A person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year.

6. At sentencing, the trial court outright rejected Averitte's proffered mitigator that she is

the mother of dependent children. In particular, the trial court noted: "I hate to think that it is sometimes beneficial for children to grow up without access to a parent, but this might be one of those cases." Tr. at 365.

7. Indiana Code Section 35–50–2–3 provides, in relevant part: "A person who commits murder shall be imprisoned for a fixed term of fifty-five (55) years, with not more than ten (10) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances."

Rather, and depending upon our examination of Averitte's appeal, Averitte may be entitled to, at most, a new sentencing hearing.

We now address the sole issue presented in this case, which we have restated as whether the trial court committed fundamental error when it accepted Averitte's jury trial waiver because it failed to advise her that she had the right to a have a jury determine, beyond a reasonable doubt, all facts legally essential to her sentence pursuant to the Sixth Amendment and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* In response, the State contends that the mere fact that the trial court did not inform Averitte of her Sixth Amendment right under *Blakely* is irrelevant because *Blakely* does not implicate Indiana's sentencing scheme. In the alternative, the State appears to counter that, even if *Blakely* invalidates Indiana's sentencing procedure, Averitte is still entitled to no relief because the resulting error, if any, is harmless in nature.

■ In addressing whether *Blakely* implicates our present sentencing scheme, we observe that, on March 9, 2005, the Indiana Supreme Court decided *Smylie v. State*, 823 N.E.2d 679, 684–85 (2005), wherein it applied *Blakely* to invalidate portions of Indiana's sentencing scheme that allowed a trial court, without the aid of a jury or a waiver by the defendant, to enhance a sentence where certain factors were present. In so doing, our supreme court, first, recognized that the present sentencing scheme in Indiana: (1) provides a "fixed term" presumptive sentence for each class of felonies; (2) creates upper and lower boundaries for each felony sen-

tence; and (3) permits a trial court to depart from the presumptive sentence upon the finding and balancing of certain aggravating and mitigating circumstances. *Id.* at 683–84; *see also* Ind.Code §§ 35–50–2–3 to –7; 35–38–1–7.1. The *Smylie* court then compared Indiana's sentencing procedure to that of Washington's, which was examined at length in *Blakely,* and determined that:

> For *Blakely* purposes, Indiana's "fixed term" is the functional equivalent of Washington's "standard sentencing range." Both establish a mandatory starting point for sentencing criminals based on the elements of proof necessary to prove a particular offense and the sentencing class into which the offense falls. The trial court judge then must engage in judicial fact-finding during sentencing if a sentence greater than the presumptive fixed term is to be imposed. It is this type of judicial fact-finding that concerned the Court in *Blakely.* "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment.'"

*Id.* at 683 (footnote and citation omitted). The *Smylie* court concluded that, "Indiana's sentencing scheme runs afoul of the Sixth Amendment not because it mandates a 'fixed term' sentence for each felony, but because it mandates *both* a fixed term and permits judicial discretion in finding aggravating or mitigating circumstances to deviate from the fixed term." *Id.* at 685 (emphasis in original). Accordingly, in light of our supreme court's pronouncement in *Smylie,* we reject the State's argument that *Blakely* does not implicate Indiana's sentencing scheme.[8]

8. Although not implicated in this case, we note that, pursuant to *Smylie,* there is no constitutional problem with Indiana's statuto-ry scheme regarding the imposition of consecutive sentences as long as the trial court does

■ We now examine whether Averitte waived her Sixth Amendment right at sentencing when she executed her waiver of jury trial form. The right to a trial by jury is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 13 of the Indiana Constitution, and is subject to a knowing, intelligent, and voluntary waiver. *Leone v. State*, 797 N.E.2d 743, 752 n. 5 (Ind.2003). That said, in *Blakely*, the Court recognized two circumstances in which a defendant—specifically a guilty plea defendant—may waive his or her Sixth Amendment right to have a jury determine, beyond a reasonable doubt, all facts legally essential to the sentence. *Blakely*, 124 S.Ct. at 2541. In particular, the Court observed:

> When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. *If appropriate waivers are procured*, States may continue to offer judicial factfinding as a

matter of course to all defendants who plead guilty.

*Id.* (emphasis added and internal citations omitted).

In addition, the *Smylie* court acknowledged that "it is entirely possible for defendants to have waived or forfeited their ability to appeal their sentence on *Blakely* grounds." *Smylie*, 823 N.E.2d at 689. For example, the court noted that defendants who, on appeal, fail to raise any complaint at all concerning "the propriety of their sentence have arguably made the sort of knowing and intelligent decision regarding their appeal that is required for waiver to exist." *Id.* at 690.

■ In the present case, the record reveals that Averitte executed her jury trial waiver and was tried to the bench, convicted of murder, and sentenced to a term of sixty years prior to the United States Supreme Court's decision in *Blakely*. Accordingly, Averitte was never specifically advised of her right to have a jury determine the facts legally essential to her sentence,[9] nor did the trial court—which did

---

not exceed the combined statutory maximums.

9. We further observe that, prior to *Blakely*, the Supreme Court had decided *Apprendi v. New Jersey*, wherein it held that:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the *prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.

530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (citing *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)) (emphasis added). This holding alone, however, was insufficient to inform Averitte, or the trial court for that matter, of her right to have a jury determine the facts legally essential to her sentence, inasmuch as Averitte's sentence did not exceed a term of sixty-five years. Indeed, a thorough examination of *Apprendi* reveals that the Court utilized the phrase "statutory maximum" to refer to the ten-year prescribed

statutory maximum, which a defendant could receive for a second-degree offense *if* the preponderance of certain aggravating and mitigating circumstances, as found by the trial court, weighed in favor of the higher term. *See Apprendi*, 530 U.S. at 468, 120 S.Ct. 2348 (noting that, by statute, the statutory maximum penalty for a second-degree offense, i.e., the crime of which the defendant was convicted, was ten years and the presumptive sentence was seven years). By contrast, the Court in *Blakely* employed the phrase "statutory maximum" to refer to the maximum sentence that a trial judge may impose without any additional findings, i.e., Washington's standard sentence or Indiana's presumptive sentence. As such, *Blakely* redefined the "statutory maximum" for purposes of *Apprendi*. *See Smylie*, 823 N.E.2d at 682–83; *see also Strong v. State*, 817 N.E.2d 256, 259–61 (Ind.Ct.App.2004), *aff'd on reh'g*, 820 N.E.2d 688 (Ind.Ct.App.2005), *trans. pending*.

not have the benefit of the *Blakely* analysis—procure from Averitte any waiver of such right. Thus, under these circumstances, we do not conclude that Averitte knowingly, intelligently and voluntarily waived her right under *Blakely*.

 Having determined that Averitte did not knowingly waive her Sixth Amendment right pursuant to *Blakely*, we next examine whether Averitte is entitled to a new sentencing hearing. The improper denial of a defendant's Sixth Amendment right to have a jury determine all facts legally essential to his or her sentence is subject to a harmless-error analysis. *See United States v. Booker*, 543 U.S. ——, ——, 125 S.Ct. 738, 769, 160 L.Ed.2d 621 (2005); *see also Holden v. State*, 815 N.E.2d 1049, 1060 (Ind.Ct.App.2004), *trans. denied.* A denial of the defendant's Sixth Amendment right constitutes harmless error where the evidence supporting the conviction or enhancement is so convincing that a jury could not have found otherwise. *See Garner v. State*, 777 N.E.2d 721, 725 (Ind.2002) (in the context of the Confrontation Clause).

 In the present case, the trial court enhanced Averitte's sentence by five years based upon: (1) the method that Averitte used to dispose of Kilbert's body; (2) the fact that Averitte violated a position of trust; (3) the fact that Averitte "orchestrated a conspiracy in silence;" and (4) the fact that the murder of Kilbert resulted in monetary gain to Averitte's mother. Tr. at 364–65. The record demonstrates that, during an argument with Kilbert, her stepfather, Averitte and Andrea wrestled Kilbert to the ground. Andrea then provided Averitte with a gun and Averitte directed Andrea to turn up the volume on the stereo, while she shot Kilbert twice in the head. The evidence further demonstrates that, in an attempt to dispose of Kilbert's body, Averitte removed the clothing from his body, wrapped the body in a blanket or a tarp, transported it to a park in Indianapolis, and directed Andrea and Carolyn to burn Kilbert's body, while she remained in the car and acted as a "lookout."

Subsequently, and in an attempt to conceal the crime, Averitte returned to Kilbert's house, where she mopped and waxed the floors. Averitte also directed Carolyn to take the car that was used to transport Kilbert's body to a carwash and clean it out. Finally, the record reveals that Averitte's mother was the beneficiary of Kilbert's life insurance policy and, thus, would receive the proceeds payable upon his death. This evidence overwhelmingly supports the trial court's findings of aggravating circumstances to the point where we do not believe that a reasonable jury would have concluded otherwise. Accordingly, any error in the trial court's denial of Averitte's Sixth Amendment right in sentencing is harmless. As such, we affirm Averitte's enhanced sixty-year sentence.

Affirmed.

SULLIVAN, J., and MATHIAS, J., concur.