Jamie A. FREEZE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–0412–CR–562.

Court of Appeals of Indiana.

May 18, 2005.

601

Rodolfo S. Monterrosa, Jr., South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Jamie Freeze appeals the sentence imposed on his conviction for Class B felony possession of methamphetamine. We reverse and remand for resentencing.

### Issue

The sole issue before us is whether the manner in which the trial court determined Freeze's sentence was unconstitutional.

### Facts

On January 6, 2004, the State filed an information charging Freeze with Class A felony possession of methamphetamine with intent to deliver. The information and probable cause affidavit alleged that Freeze was in possession of twenty-two grams of methamphetamine. On March 11, 2004, Freeze pled guilty to Class B felony possession of methamphetamine with intent to deliver, at which time Freeze expressly refused to admit the amount of methamphetamine he had possessed.

The trial court conducted a sentencing hearing on April 8, 2004, during which Freeze admitted he was on bond for another offense at the time he committed the current crime; the trial court orally noted this as an aggravating circumstance.[1] Additionally, the trial court noted Freeze's criminal history, which consists of two juvenile delinquency adjudications and four adult misdemeanor convictions, as well as one previous probation violation finding. The trial court also noted as aggravating circumstances the allegations that he possessed twenty-two grams of methamphet-

amine, and that he was in possession of both a firearm and marijuana when he was arrested for the offense. The trial court noted several mitigating circumstances, including Freeze's expression of remorse and acceptance of responsibility. It then imposed an enhanced sentence of fifteen years, five years above the presumptive Class B felony sentence of ten years but five years below the maximum possible.[2] Freeze now appeals the sentencing decision.

### Analysis

■ Freeze argues that the trial court's reliance on facts not found by a jury beyond a reasonable doubt to enhance his sentence violated his Sixth Amendment right to trial by jury, as set out by *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Blakely* held that every defendant has the right under the Sixth Amendment "to insist that the prosecutor prove to a jury all facts legally essential to the punishment." *Id.* at ――, 124 S.Ct. at 2543. In doing so, the Supreme Court followed and expanded on *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), which holds: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely* clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. 296, 124 S.Ct. at 2537, 159 L.Ed.2d 403.

---

1. Freeze also pled guilty to this prior offense, Class A felony possession of methamphetamine with intent to deliver, and was sentenced for it during the same April 8, 2004 sentencing hearing. A separate appeal re-

garding this sentence is pending under cause number 20A03–0412–CR–564, but has not yet been fully briefed.

2. Ind.Code § 35–50–2–5.

■ Our supreme court has held that *Blakely* impacts Indiana's sentencing scheme and that any facts, other than criminal history and those admitted by a defendant, used to enhance a sentence above the presumptive must be found by a jury beyond a reasonable doubt. *See Smylie v. State*, 823 N.E.2d 679, 683–85 (Ind.2005). Additionally, we are to apply *Blakely* "retroactively to all cases on direct review at the time *Blakely* was announced" and "a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal...." *Id.* at 690–91. We will, therefore, address Freeze's *Blakely* argument on the merits because that case was decided while Freeze's direct appeal was pending.

■ Here, the trial court relied upon Freeze's two juvenile delinquency adjudications and several adult misdemeanor convictions as an aggravating circumstance. As noted, a defendant's criminal history need not be found by a jury to be utilized by a trial court as an aggravating circumstance.[3] *See Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63. Additionally, Freeze admitted during the sentencing hearing that he was on bond when he committed the current offense. Admissions by a defendant are also exempt from the *Apprendi/Blakely* jury trial requirement. *See Blakely*, 542 U.S. at ——, 124 S.Ct. at 2537. Also, the commission of a crime while on bond for a similar offense, as happened here, may properly be considered an aggravating circumstance. *See Dudley v. State*, 480 N.E.2d 881, 905–06 (Ind.1985). The trial court also assigned aggravating weight to a finding that Freeze had once violated probation on one of his misdemeanor convictions. Whether a probation violation finding also consti-

tutes part of Freeze's criminal history is something we do not need to decide. We find from the record that Freeze admitted this violation, when counsel told the trial court during the sentencing hearing, "with reference to the State's position on whether or not the defendant was successful with probation, we ... believe perhaps at that time he was young and stupid. Didn't realize the importance of following through with these obligations as set out by the Court." Tr. p. 41. This effectively constitutes an admission to the probation violation, albeit an attempt to explain it away. Thus, the trial court here properly relied on three aggravating circumstances in sentencing Freeze: his criminal history, his being on bond when he committed the present offense, and one probation violation.

■ The trial court also relied on the following circumstances as aggravating: the amount of methamphetamine Freeze allegedly possessed (twenty-two grams on this count), the allegation that he also possessed a firearm when he was arrested, and the allegation that he also possessed marijuana when he was arrested. Freeze did not admit to any of these facts. When he pled guilty to the Class B felony offense, the trial court specifically clarified with Freeze that he was "not admitting that the amount of methamphetamine which you possessed with intent to deliver was three grams or more." Tr. pp. 19–20. With respect to the firearm allegation on this charge, counsel stated that Freeze "was not aware of that weapon, and at no point did he acknowledge any possession of that item." Tr. p. 33. With respect to the marijuana allegation, it is unclear where this information came from, but Freeze never admitted to it. The trial court's use

---

3. Freeze makes no argument that his delinquency adjudications cannot be considered

part of his "criminal history."

of these three circumstances as aggravators, not found by a jury beyond a reasonable doubt nor admitted by Freeze, violated *Blakely* and *Smylie*. *See Blakely*, 542 U.S. 296, 124 S.Ct. at 2537; *Smylie*, 823 N.E.2d at 683–85.

Because the State argues harmless error in this case, we now address that argument. We begin by observing that the question of "harmless error" in the context of *Blakely* can become complicated. First, there is the question of whether a trial court's improper reliance on non-criminal history aggravators neither found by a jury nor admitted by a defendant is harmless, where other valid aggravators exist. This court has indicated that in such a situation, the question is whether this court can say, beyond a reasonable doubt, that the trial court would have imposed an identical sentence relying strictly on the permissible aggravators and ignoring the impermissible aggravators. *See Holden v. State*, 815 N.E.2d 1049, 1060 (Ind.Ct.App. 2004) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)), *trans. denied.*

██ It has also been stated that even with respect to an aggravator neither found by a jury nor admitted by a defendant, a trial court's reliance on such an aggravator to enhance a sentence may be harmless, even where no *Blakely*-valid aggravators exist, if a court on appeal can determine that the evidence supporting the aggravator is so convincing that a jury could not have found otherwise. *See Averitte v. State*, 824 N.E.2d 1283, 1287–88 (Ind.Ct.App. 2005). The Supreme Court in deciding *Apprendi, Blakely*, or most recently *United States v. Booker*, 542 U.S. 296, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), did not address whether this would be a correct application of the harmless error doctrine. The Court in *Booker* did say that "in cases *not* involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine." *Id.* at ——, 125 S.Ct. at 769 (emphasis added). In cases that do involve a Sixth Amendment violation, the Court simply said it expected "reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." *Id.*[4]

The test for "harmless error" enunciated in *Averitte* is not without precedential support. There are cases from the federal circuits, decided after *Apprendi*, that have held a trial court's error in relying on an aggravator neither found by a jury nor admitted by a defendant to be harmless if it is clear beyond a reasonable doubt that a properly instructed jury would have found the existence of the aggravating circumstance. *See United States v. Mojica–Baez*, 229 F.3d 292, 311–12 (1st Cir.2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001); *Campbell v. United States*, 364 F.3d 727, 737 (6th Cir.2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 987, 160 L.Ed.2d 1066 (2005); *United States v. Trennell*, 290 F.3d 881, 890 (7th Cir.2002), *cert. denied*, 537 U.S. 1014, 123 S.Ct. 508, 154 L.Ed.2d 419; *but see State v. Hughes*, 110 P.3d 192, 204–07 (Wash. 2005) (holding that lack of jury finding for aggravating

---

4. The federal "plain-error" test is roughly equivalent to Indiana's test for "fundamental error," not "harmless error." *See Smylie*, 823 N.E.2d at 689 n. 16. *Smylie* also made it clear that defendants who meet that case's criteria for raising a *Blakely* issue on direct appeal will not have to establish "fundamental error" in order to receive appellate review of their claim. *Id.*

circumstance is structural error and can never be harmless).

We believe we must tread cautiously if we are to attempt to determine whether a jury "surely" would have found the existence of an aggravating circumstance and, therefore, a trial court's reliance on such an aggravating circumstance was "harmless." The idea that a deprivation of the Sixth Amendment right to a jury trial could ever be considered "harmless" is of recent and now-questionable vintage. Specifically, we observe that in 1993, the Supreme Court held unequivocally that the improper deprivation of the right to a jury trial was a "structural" error, rather than mere trial error, and warranted automatic reversal of a conviction. *See Sullivan v. Louisiana,* 508 U.S. 275, 280–81, 113 S.Ct. 2078, 2082–83, 124 L.Ed.2d 182 (1993). There, the Court, through Justice Scalia, said:

> The most an appellate court can conclude is that a jury would surely have found petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt would surely not have been different absent the constitutional error. That is not enough. The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.

*Id.* at 280, 113 S.Ct. at 2082.

The Supreme Court apparently discarded this "structural" error approach to the deprivation of the right to a jury trial in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). There, a five-justice majority held that where a jury was not instructed on an element of an offense, and thus there was no jury finding on that element, it was proper for an appellate court to find the error harm-

less and affirm a conviction despite deprivation of the Sixth Amendment right to a jury trial, if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty" despite the lack of an actual jury finding on that element. *Id.* at 18, 119 S.Ct. at 1838. It is conceivable that the existence or non-existence of an aggravating circumstance for sentencing purposes could be analogized to the existence or non-existence of an element of an offense that was necessary for a finding of guilt in the first place.

We believe the validity of *Neder* might be short-lived, in light of the seismic shift in the Supreme Court's Sixth Amendment jurisprudence since 1999. Specifically, Justice Scalia wrote a vigorous dissent in *Neder,* joined in part by Justice Stevens and fully by Justices Ginsburg and Souter—in other words, four of the five members of the *Blakely* majority. Justice Thomas, the fifth *Blakely* justice, was in the *Neder* majority. After *Neder,* and beginning at least with *Apprendi,* he has repudiated a narrow interpretation of the Sixth Amendment jury trial right and has joined Justice Scalia's broad view of it. *See also Shepard v. United States,* ⸺ U.S. ⸺, 125 S.Ct. 1254, 1264, 161 L.Ed.2d 205 (Thomas, J., concurring) (disavowing his concurring vote in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), a five-four Sixth Amendment decision upon which criminal history "exception" to *Apprendi-Blakely* rule is based). Additionally, *Neder* itself cautions that "safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error ... it should not find the error

harmless." *Neder,* 527 U.S. at 19, 119 S.Ct. at 1838.

 Even acknowledging *Neder's* continued viability unless and until the Supreme Court expressly overrules it, we would decline to find *Neder*-type harmless error in this case. The issues of the amount of methamphetamine Freeze possessed and whether he also possessed marijuana and a firearm at the time of his arrest were not litigated, unlike the missing element in *Neder* and the aggravating circumstances in *Averitte,* evidence of which apparently had been presented during trial. *Averitte,* 824 N.E.2d at 1287–88. We presume this information was reflected in the police reports or probable cause affidavit, which are not in the record before us, but Freeze did not admit these facts during his guilty plea hearing or sentencing hearing, nor was any additional evidence presented to support such facts. We decline, on such a record, to reach a conclusion that the jury surely would have found the existence of these aggravators beyond a reasonable doubt.

 We now address the *Chapman* harmless error question—i.e., whether the remaining valid aggravators support Freeze's enhanced sentence. We cannot conclude beyond a reasonable doubt that the trial court would have imposed an identical fifteen-year sentence if it had not considered the amount of methamphetamine Freeze allegedly possessed and the allegations that he also possessed a firearm and marijuana at the time of his arrest. Granted, the three remaining valid aggravators—Freeze's criminal history, one prior probation violation, and the fact that he was on bond when he committed this offense—by themselves likely could

justify a five-year enhancement of Freeze's sentence. Here, however, the trial court found several mitigating circumstances, including Freeze's expression of remorse, his taking of responsibility for his actions, his assertion that he has worked to improve himself while incarcerated awaiting sentencing for this offense, and his considerable support from family and friends.[5] Under the circumstances, and giving Freeze the benefit of the (reasonable) doubt, we conclude it is appropriate to remand for resentencing. At that time, the State may elect to prove the three invalidated aggravating circumstances to a jury or to have the trial court resentence Freeze in reliance only on the three valid aggravating circumstances. *Cf. Smylie,* 823 N.E.2d at 691.

## Conclusion

We reverse Freeze's fifteen-year sentence for Class B felony possession of methamphetamine and remand for resentencing.

Reversed and remanded.

KIRSCH, C.J., and BAKER, J., concur.

---

**5.** The trial court also noted as possibly mitigating Freeze's lack of any prior adult felony conviction, his age (twenty-five), hardship to Freeze's dependents, and his addiction to illegal drugs, but stated that it gave little weight to these factors or did not find them significant.