Leslie G. MILLER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 40A01–0707–CR–343.

Court of Appeals of Indiana.

April 29, 2008.

Alison T. Frazier, Madison, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Leslie G. Miller (Miller), appeals his conviction for child molesting as a Class A felony, Ind.Code § 35–42–4–3, and the sentence he received for that crime and two counts of child molesting as a Class C felony, I.C. § 35–42–4–3.

We affirm in part, reverse in part, and remand.

*ISSUES*

On appeal, Miller raises four issues, which we restate as:

(1) Whether the evidence is sufficient to support his conviction for child molesting as a Class A felony;

(2) Whether the trial court sentenced him in violation of his rights under *Blakely v. Washington,* 542 U.S. 296,

124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied;*

(3) Whether his sentence is inappropriate in light of the nature of the offenses and his character; and

(4) Whether the trial court erred when it ordered him to pay $10,770.00 to the Jennings County Prisoner Reimbursement Fund without first inquiring into his ability to pay.

*FACTS AND PROCEDURAL HISTORY*

In 2005, fifty-six-year-old Miller lived with his wife next door to twelve-year-old A.W. and her family in North Vernon, Indiana. A.W. and her fourteen-year-old brother K.W. had spent a great deal of time at Miller's house over the previous several years, and by 2005, A.W. and K.W. were at Miller's house nearly every day. Miller sometimes paid A.W. and K.W. for working around his yard. Other times, Miller would give them money without them having done any work. Miller also purchased numerous gifts for A.W. and her family, including a computer, an air conditioner, and a scooter. He also purchased cellular phones for A.W. and K.W.

One evening in January 2005, when A.W. was at Miller's house, Miller told her that he wanted to show her something in his bedroom. Once in the bedroom, Miller first told A.W. to sit down on the bed and then told her to lie down. Miller then told A.W. to take her pants off. Miller touched A.W.'s breasts and then her "private" with his hand or fingers. (Transcript p. 83). Miller unzipped his pants and "took out his private," and A.W. touched it. (Tr. pp. 84–85). Miller also told A.W. to touch his "private" with her mouth, which she did. (Tr. pp. 88–89). When the encounter was over, Miller told A.W. that he would hurt her if she told anybody. Miller then took A.W. and K.W. out for dinner.

On January 29, 2005, Miller's wife discovered a contract for the cellular phone Miller had purchased for A.W. When she confronted Miller, he admitted that he bought the phone for A.W. and had been paying for it. That same day, Miller's wife found a picture of A.W. in Miller's truck. After Miller and his wife had an argument over the nature of his relationship with A.W., Miller left to take his mother out to eat. When Miller left, his wife decided to look through the garage. While doing so, she found letters Miller had written to A.W. torn up and/or crumpled up in the trash. The letters made reference to love and sexual activity. Because she found the letters to be "very inappropriate," Miller's wife called police to report the situation. (Tr. p. 46). The police contacted A.W.'s parents and spoke with A.W. and K.W. A.W. told police about the incident in Miller's bedroom and also about a separate incident that had allegedly taken place in Miller's garage. In addition to the acts listed above, A.W. stated that Miller "took his and rubbed it on mine" and "licked down there." (Tr. pp. 203, 209).

On February 3, 2005, the State filed an Information charging Miller with five counts of child molesting under Indiana Code section 35–42–4–3: Count I, a Class A felony for performing oral sex on A.W.; Count II, a Class A felony for submitting to oral sex performed by A.W.; Count III, a Class C felony for submitting to the fondling of his penis by A.W.; Count IV, a Class C felony for fondling A.W.'s vagina with his finger; and Count V, a Class C felony for fondling A.W.'s genitals with his genitals.

On July 6, 2006, the first day of trial, Miller pled guilty to Counts III and IV, both Class C felonies. The plea agreement contained the following provision: "You have been informed that by pleading guilty, you have voluntarily waived the

right to have a jury determine the aggravating or mitigating circumstances that can enhance or reduce your sentence above or below the presumptive sentence." (Appellant's App. p. 102). The first provision of the agreement informed Miller that he "must read this document carefully," and the last provision of the agreement required Miller to certify that he read and understood the agreement and wished to waive the enumerated rights. (Appellant's App. pp. 102, 105). At the guilty plea hearing, Miller acknowledged that he had read his plea agreement carefully, that he had discussed it with his attorney, and that he understood it.

During the ensuing bench trial on Counts I, II, and V, A.W. testified, in part, that Miller had told her to put her mouth on his penis and that she did it. Miller acknowledged that A.W.'s mouth touched his penis but contended that he pushed her away as soon as her lips made contact and told her not to do that. Nonetheless, the trial court found Miller guilty of Count II, child molesting as a Class A felony, which alleged that Miller had submitted to oral sex performed by A.W. The trial court found Miller not guilty on Counts I and V.

On June 29, 2007, the parties appeared for sentencing on Counts II, III, and IV. The trial court identified the following four aggravating circumstances: (1) Miller's acts were part of an ongoing scheme or plan rather than an isolated incident of extremely poor judgment; (2) the negative emotional impact on A.W.; (3) Miller used gifts to foster the relationship; and (4) Miller violated the position of trust he held with A.W. The trial court also found the following seven mitigating circumstances: (1) Miller is a high school graduate; (2) Miller showed remorse; (3) Miller was employed most of his adult life; (4) Miller voluntarily sought counseling; (5) Miller had no criminal history; (6) there is no evidence that Miller used any force; and (7) there is evidence that it is unlikely that Miller will re-offend.

Finding that the aggravators "slightly" outweighed the mitigators, the trial court stated that it was imposing an aggravated sentence of thirty-five years on the Class A felony, to run concurrently with six-year sentences for each of the Class C felonies, with ten years suspended to probation, for a total executed sentence of twenty-five years. (Tr. pp. 408–09). However, in its written sentencing order, the abstract of judgment, and the chronological case summary (CCS), the trial court indicated that it was imposing the presumptive sentence of thirty years on the Class A felony, to run concurrently with six-year sentences for each of the Class C felonies, with five years suspended to probation, for the same total executed sentence of twenty-five years. (Appellant's App. pp. 6, 131, 136).

Furthermore, the trial court's written sentencing order provided, in pertinent part:

> Five (5) years of the sentence are suspended provided the Defendant complies with all conditions of probation for sixty (60) months as follows:
>
> . . .
>
> (20) The Defendant shall pay Ten Thousand Seven Hundred Dollars ($10,770.00) to the Jennings County Prisoner Reimbursement Fund, which shall be entered as a judgment against the Defendant and in favor of the Auditor of Jennings County in the judgment docket of the Clerk of this Court.

(Appellant's App. pp. 131, 134). The trial court attached "Conditions of Probation" to its sentencing order. Condition 16 stated: "You shall make a minimum payment of $225.00 per month/week toward all fines and fees associated with this case until a total of $13,309.00 is paid." (Appellant's

App. p. 138). The $13,309.00 amount included the $10,770.00 payable to the Jennings County Prisoner Reimbursement Fund.

Miller now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

Miller first challenges the sufficiency of the evidence with regard to his conviction for Count II, child molesting as a Class A felony. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212–13 (Ind.Ct.App. 2007), *trans. denied.* We will consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* at 214. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

In Count II, the State charged Miller under Indiana Code section 35–42–4–3, which provides, in pertinent part:

(a) A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if:

(1) it is committed by a person at least twenty-one (21) years of age[.]

In turn, Indiana Code section 35–41–1–9 defines "deviate sexual conduct" as an act involving either (1) a sex organ of one person and the mouth or anus of another person or (2) the penetration of the sex organ or anus of a person by an object. Here, Count II alleged that Miller, a person at least twenty-one years of age, submitted to deviate sexual conduct, specifically, oral sex, performed by A.W., a person under fourteen years of age.

Miller does not deny that A.W.'s mouth touched his penis. Rather, he argues that he did not "submit" to that touching. He points to his own testimony that he pushed A.W. away as soon as her lips touched his penis and told her not to do that. However, A.W. testified that she put her mouth on Miller's penis because Miller told her to do so. (Tr. p. 89). Miller is asking us to reweigh the evidence and judge the credibility of the witness, which we will not do. *See Perez*, 872 N.E.2d at 212–13. The evidence was sufficient for the trial court to find beyond a reasonable doubt that Miller submitted to an act involving his penis and A.W.'s mouth, as required by the definition of deviate sexual conduct. *See* I.C. § 35–41–1–9.

### II. *Sentencing*

Miller also challenges his sentence. He argues that the trial court sentenced him in violation of his rights under the United States Supreme Court's opinion in *Blakely,* that his sentence is inappropriate in light of the nature of his offenses and his character, and that the trial court erred by ordering him to pay $10,770.00 to the Jennings County Prisoner Reimbursement Fund without first inquiring into his ability to pay.

### A. *Blakely*

Miller first contends that he was sentenced in violation of the United States Supreme Court's opinion in *Blakely.* We first note that the rule of *Blakely* has no application under Indiana's current advisory sentencing scheme. *Anglemyer v. State*, 868 N.E.2d 482, 489 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.2007). However, because Miller committed the

offenses in question before Indiana's advisory sentencing scheme came into effect on April 25, 2005, he was entitled to be sentenced under the former presumptive scheme, to which *Blakely* does apply. *Robertson v. State*, 871 N.E.2d 280, 286 (Ind.2007).

In *Blakely*, the Court reiterated its holding from *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 542 U.S. at 301, 124 S.Ct. 2531. The Court further explained that the relevant "statutory maximum" for purposes of the *Apprendi* rule "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303–04, 124 S.Ct. 2531. Under Indiana's former presumptive sentencing scheme, the "statutory maximum" for *Blakely* purposes was the presumptive sentence because the felony sentencing statutes allowed an upward departure from that sentence only upon the finding of aggravating circumstances. *Smylie v. State*, 823 N.E.2d 679, 684 (Ind.2005), *cert. denied*, 546 U.S. 976, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005).

Turning first to Miller's sentence for Count II, child molesting as a Class A felony, we note that while the trial court stated during the sentencing hearing that it was imposing a sentence of thirty-five years with ten years suspended, its written sentencing order, the abstract of judgment, and the CCS all indicate that the trial court imposed a sentence of thirty years with five years suspended. *See McElroy v. State*, 865 N.E.2d 584, 589 (Ind.2007) ("Rather than presuming the superior accuracy of the oral statement,

we examine it alongside the written sentencing statement to assess the conclusions of the trial court."). Under Indiana's former presumptive scheme, thirty years was the presumptive sentence for a Class A felony. *See* I.C. § 35–50–2–4 (2004). *Blakely* is only implicated when the sentence imposed exceeds the presumptive term. *Hightower v. State*, 866 N.E.2d 356, 371 n. 13 (Ind.Ct.App.2007) (citing *Prickett v. State*, 856 N.E.2d 1203, 1210 (Ind.2006)), *trans. denied.* Therefore, there is no *Blakely* problem with Miller's presumptive thirty-year sentence for Count II, child molesting as a Class A felony.

■ With regard to Miller's six-year sentences for the two counts of child molesting as Class C felonies, the State acknowledges that the sentences exceed the presumptive term of four years for a Class C felony. *See* I.C. § 35–50–2–6 (2004). As such, those sentences would normally implicate *Blakely*, but the State contends that Miller waived his *Blakely* rights with regard to the two Class C felonies. The State points to the following provision in the plea agreement: "You have been informed that by pleading guilty, you have voluntarily waived the right to have a jury determine the aggravating or mitigating circumstances that can enhance or reduce your sentence above or below the presumptive sentence." (Appellant's App. p. 102).

It is well-established that *Blakely* rights are subject to knowing, intelligent, and voluntary waiver. *See Higginbotham v. State*, 826 N.E.2d 5, 6–7 (Ind.Ct.App.2005). However, Miller argues that his waiver "was not knowingly and intentionally made." (Appellant's Reply Br. p. 3). In support of his argument, he cites our decision in *Averitte v. State*, 824 N.E.2d 1283 (Ind.Ct.App.2005). We find *Averitte* to be distinguishable. In *Averitte*, we noted that while the defendant knowingly and

voluntarily waived her right to have her *guilt or innocence* determined by a jury, she had not been advised of her right under *Blakely* to have a jury decide the facts legally essential to her *sentence.* *Id.* at 1287–88. In sum, the waiver applied only to the guilt phase, not the sentencing phase.

Here, on the other hand, Miller's plea agreement specifically stated that by pleading guilty, he had "voluntarily waived the right to have a jury determine *the aggravating or mitigating circumstances that can enhance or reduce [his] sentence above or below the presumptive.*" (Appellant's App. p. 102) (emphasis added). This waiver clearly applies to Miller's *Blakely* rights. The agreement further informed Miller that he "must read this document carefully" and required him to certify that he read and understood the agreement and wished to waive the enumerated rights. (Appellant's App. pp. 102, 105). Also, at the guilty plea hearing, Miller acknowledged that he had read his plea agreement carefully, that he had discussed it with his attorney, and that he understood it. Miller has not persuaded us that his waiver was not made knowingly and intentionally.

Still, Miller asserts that a written waiver is *per se* insufficient and that the trial court must engage in a colloquy with the defendant to make sure the defendant understands his *Blakely* rights and "the significance of his waiver thereof." (Appellant's Reply Br. p. 2). However, Miller has failed to direct us to any case in which an Indiana appellate court has required such a colloquy. To the contrary, we have found a valid waiver of *Blakely* rights based solely upon the provisions of a written plea agreement. *See Williams v. State*, 836 N.E.2d 441, 444–45 (Ind.Ct.App. 2005). Miller's argument is unavailing.

### B. *Inappropriateness*

■ Next, Miller argues that his sentence is inappropriate under Indiana Appellate Rule 7(B). The rule permits us to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *see also Childress v. State*, 848 N.E.2d 1073, 1079 (Ind.2006). The burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

We first emphasize the disparity between the sentence that Miller *did* receive and the maximum sentence he *could have* received. As noted above, the trial court sentenced Miller to the presumptive term of thirty years for Count II, child molesting as a Class A felony, and enhanced terms of six years for Counts III and IV, child molesting as a Class C felony. The trial court ordered all of the sentences to run concurrently, for a total sentence of thirty years. Finally, the trial court suspended five years to probation, for a total executed sentence of twenty-five years. If the trial court had ordered maximum sentences of fifty years for the Class A felony and eight years for each Class C felony and run the sentences consecutively, Miller's sentence would have been sixty-six years. Given his actual sentence of thirty years with five years suspended to probation, Miller had a substantial hill to climb to convince us that his sentence is inappropriate. He has failed to do so.

Regarding the nature of his offenses, Miller argues that he "did not harm A.W." (Appellant's Br. p. 14). We assume he means that he did not physically injure A.W., because the notion that children are not harmed by molestation except in cases in which they are physically injured is downright ridiculous. Furthermore, the

evidence supports the trial court's conclusion that Miller used gifts to build a relationship of trust with A.W. and that Miller then violated that position of trust.

As for Miller's character, the State concedes that Miller is not among the worst offenders our courts have seen. Miller is a high school graduate who worked most of his adult life, and he has no criminal record. He showed genuine remorse for his crimes, and he voluntarily sought counseling. Moreover, there is evidence that it is unlikely that Miller will re-offend. But the trial court recognized these circumstances and gave Miller credit for them in sentencing him. Again, Miller was facing a potential sentence of sixty-six years, but the trial court only imposed a sentence of thirty years—the presumptive sentence for a Class A felony—with five years suspended to probation. We cannot say that Miller's sentence is inappropriate.

## C. Restitution

■ Finally, Miller asserts that the trial court erred in ordering him to pay $10,770.00 to the Jennings County Prisoner Reimbursement Fund without first inquiring into his ability to pay. Indiana Code section 36–2–13–15 authorizes the legislative body of a county to adopt an ordinance that requires prisoners to reimburse the county for the costs of incarceration. The statute provides, in pertinent part:

(b) This section applies to a county only if the legislative body for the county elects by ordinance to implement this section.

(c) A person who is:

(1) sentenced under this article for a felony or a misdemeanor;

(2) subject to lawful detention in a county jail for a period of more than seventy-two (72) hours;

(3) not a member of a family that makes less than 150% of the federal income poverty level; and

(4) not detained as a child subject to the jurisdiction of a juvenile court;

*shall* reimburse the county for the costs described in subsection (d).

(d) A person described in subsection (c) *shall* reimburse the county for the sum of the following amounts:

(1) The lesser of:

(A) the per diem amount specified under subsection (e); or

(B) thirty dollars ($30);

multiplied by each day or part of a day that the person is lawfully detained in a county jail or lawfully detained under IC 35–33–11–3 for more than six (6) hours.

(2) The direct cost of investigating whether the person is indigent.

(3) The cost of collecting the amount for which the person is liable under this section.

I.C. § 36–2–13–15 (emphases added). Because both parties reference Indiana Code section 36–2–13–15, and because the trial court's sentencing order referred to the "Jennings County Prisoner Reimbursement Fund", we will assume that Jennings County has adopted an ordinance under the statute.

The use of the word "shall" in the statute indicates that trial courts have no discretion on this issue in counties that have adopted the relevant ordinance; they must order prisoners to reimburse the counties for the costs of incarceration. However, things become more complicated when the trial court wishes to make such reimbursement a condition of the defendant's probation. In such cases, the trial court cannot fix an amount of reimbursement that exceeds an amount the person "can or will be able to pay." I.C. § 36–2–13–15(a)(20)(A).

Such rules exist "in order to prevent indigent defendants from being imprisoned because of their inability to pay." *Shaffer v. State*, 674 N.E.2d 1, 9 (Ind.Ct.App.1996), *trans. denied; see also Sales v. State*, 464 N.E.2d 1336, 1340 (Ind.Ct.App.1984) ("[E]qual protection is denied where an indigent defendant is consigned to a jail term due to an inability to satisfy financial conditions of a judgment."). Therefore, when such an obligation is made a condition of probation, the trial court must inquire into the defendant's ability to pay. *See Pearson v. State*, 883 N.E.2d 770 (Ind. 2008). It is undisputed that the trial court made no such inquiry in this case.

Nonetheless, the State argues that the trial court did not err because it did not make payment to the Jennings County Prisoner Reimbursement Fund a condition of Miller's probation. Rather, the State contends, the reimbursement order is merely a money judgment against Miller for which Miller cannot be imprisoned for non-payment. *See Shaffer v. State*, 674 N.E.2d at 9.

Viewed in isolation, the provision of the trial court's sentencing order requiring payment to the Jennings County Prisoner Reimbursement Fund supports the State's argument. It states: "The Defendant shall pay Ten Thousand Seven Hundred Dollars ($10,770.00) to the Jennings County Prisoner Reimbursement Fund, which shall be entered as a judgment against the Defendant and in favor of the Auditor of Jennings County in the judgment docket of the Clerk of this Court." (Appellant's App. p. 134). However, the State makes no mention of the fact that the above provision was item (20) of (24) under the following heading: "Five (5) years of the sentence are suspended provided the Defendant complies with *all conditions of probation for sixty (60) months as follows:* " (Appellant's App. p. 131) (emphasis added). Likewise, in the "Conditions of Probation" attached to its sentencing order, the trial court ordered Miller to "make a minimum payment of $225.00 per month/week toward all fines and fees associated with this case until a total of $13,309.00 is paid." (Appellant's App. p. 138). The $13,309.00 amount included the $10,770.00 payable to the Jennings County Prisoner Reimbursement Fund. Therefore, while the trial court entered the reimbursement order as a judgment in favor of the county, it also made payment of that judgment a condition of Miller's probation. It did so without inquiring into Miller's ability to pay. As such, we must remand this cause to the trial court.

On remand, the trial court has two options. If it wishes to keep the reimbursement order as a condition of probation, it must make a proper inquiry into Miller's ability to pay.[1] On the other hand, the trial court could remove the reimbursement order as a condition of probation and enter it solely as a money judgment against Miller. Under the latter option, the trial court would not be required to inquire into Miller's ability to pay, as he could not be imprisoned for his failure to pay. *See Shaffer*, 674 N.E.2d at 9. We leave these choices to the trial court.

## CONCLUSION

Based on the foregoing, we conclude that the evidence is sufficient to support Miller's conviction for child molesting as a

---

1. Even if the trial court elects this approach, it seems that any decision it makes will need to be revisited after Miller completes his twenty-five-year prison term in order to determine his then-current ability to pay. *See* *Shepard v. State*, 839 N.E.2d 1268, 1271 (Ind. Ct.App.2005) (Baker, J., concurring) ("I have not yet met a judge who can unerringly predict the future.").

Class A felony; that the trial court did not violate Miller's *Blakely* rights in sentencing him; that Miller's sentence is not inappropriate; and that the trial court erred in failing to inquire into Miller's ability to pay before making the payment of $10,770.00 to the Jennings County Prisoner Reimbursement Fund a condition of Miller's probation. Therefore, we remand this cause to the trial court to either make a proper inquiry into Miller's ability to pay or to remove the reimbursement order as a condition of Miller's probation.

Affirmed in part, reversed in part, and remanded.

BAKER, C.J., and ROBB, J., concur.